UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBIN MESEY and | ) | |
| JENNIFER MESEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1:19-CV-71 |
| | ) | |
| CITY OF VAN BUREN, MISSOURI, | ) | |
| ALONZO BRADWELL, *in his official* | ) | |
| *Capacity as Chief of Police*, and | ) | |
| CHARLES ROPER, *in his individual* | ) | |
| *capacity*, | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS CITY OF VAN BUREN, MISSOURI AND ALONZO BRADWELL, IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE**

COME NOW Defendants City of Van Buren, Missouri ("City") and Alonzo Bradwell, in his official capacity as Chief of Police ("Chief Bradwell"), by and through their counsel, Keck & Phillips, L.L.C., and pursuant to Federal Rule of Civil Procedure 56, and along with their Motion for Summary Judgment, and Statement of Uncontroverted Material Facts, both of which are incorporated by reference herein, state the following in support of their Motion for Summary Judgment:

Plaintiffs' allegations, when compared with the undisputed facts and law show that Plaintiffs have failed to state any claim against the Moving Defendants for which relief can be granted.

# <u>TABLE OF CONTENTS</u>

STANDARD OF REVIEW................................................................................ 4

BACKGROUND……………….................................................................... 4

    I.      LAW AND ARGUMENT: PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST THE MOVING DEFENDANTS FOR WHICH RELIEF CAN BE GRANTED …………………………............................................ 5

a.  Count II - Plaintiffs Cannot Show the Moving Defendants Were the "Moving Force" Behind a Fourth Amendment Violation for Purposes of a § 1983 Municipal Claim…………………………………….............................................................5

b.  Count III - Plaintiffs Cannot Use Respondeat Superior to Establish a § 1983 Municipal Claim…………………………..............................................................11

II.  CONCLUSION...............................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barge v. Eastern Anheuser-Busch, Inc.*, 87 F.3d 256, 258 (8th Cir. 1996)...............4

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997).6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .................................................4

*City of Canton*, *supra*, 489 U.S. at 390 ......................................................................8

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ....................4, 11

*Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991)........................................5

*Hill v. St. Louis University*, 123 F.3d 1114, 1118-1119 (8th Cir. 1997) ..................4

*Magee v. Trs. of the Hamline Univ.*, 747 F.3d. 532, 535 (8th Cir. 2014)................6, 8

*Parrish v. Ball*, 594 F. 3d 993, 997 and 998 (8th Cir. 2010) ..................................6, 8

*Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014)......................6, 7

*Szabla v. City of Brooklyn Park*, 486 F.3d 385, 397 (8th Cir.2007) .................. 11, 12

**Statutes**

§ 590.010 R.S.M.o ...........................................................................................6

§ 590.1040 R.S.M.o .........................................................................................6

§ 590.040 R.S.Mo. ............................................................................................6

§ 590.050 R.S.Mo. ............................................................................................6

42 U.S.C. §1983................................................................... 4, 5, 6, 7, 11, 12

**Rules**

Fed. R. Civ. P. 56(e)........................................................................................4

Rule 56(c)........................................................................................................4

## STANDARD OF REVIEW

Rule 56(c) mandates summary judgment after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. *Hill v. St. Louis University*, 123 F.3d 1114, 1118-1119 (8th Cir. 1997). Once the movant has met his burden, the non-moving party may not rest on his pleading allegations, but must show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Barge v. Eastern Anheuser-Busch, Inc.*, 87 F.3d 256, 258 (8th Cir. 1996). The non-moving party "must do something more than simply show that there is some metaphysical doubt as to the material facts," and must produce specific facts showing sufficient evidence to allow a jury to return a verdict in his favor. *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## BACKGROUND

Plaintiffs Robin and Jennifer Mesey filed their three-count Complaint pursuant to 42 U.S.C. § 1983 against the Moving Defendants, plus separate defendant Charles Roper ("Roper"). Essentially, Plaintiffs assert that on Feb. 22, 2019 Roper was employed as a police officer by the Moving Defendants and shot two of Plaintiffs' dogs under the color of state law, which actions constituted an unlawful seizure in violation of the Fourth Amendment. Doc. 1, para. 7-19. Count I is directed against Roper in his individual capacity, and adds the allegation that he was not in any immediate danger. Doc. 1, para. 21. Count II

is directed against the Moving Defendants, respectively, the City and Chief Bradwell in his official capacity, and asserts in conclusory fashion that the Moving Defendants failed to properly hire, train, supervise, control and/or discipline Roper. Doc. 1, para. 29. "Particularly, [the Moving Defendants] failed to train Defendant Roper on capturing at-large dogs, a common and recurring situation." Doc. 1, para. 31. In Count III the Plaintiffs expressly sue the City pursuant to § 1983 under a *respondeat superior* theory. Doc. 1, p.6.

## I.    LAW AND ARGUMENT: PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

### a.    Count II - Plaintiffs Cannot Show the Moving Defendants Were the "Moving Force" Behind an Fourth Amendment Violation for Purposes of a § 1983  Municipal Claim

Plaintiffs cannot establish § 1983 municipal liability, and this is dispositive as to both Moving Defendants, because Plaintiffs' claims against them are duplicative, in that Plaintiffs have sued Chief Bradwell in his official capacity. Doc. 1, para.2. "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991). Primarily, even if Plaintiffs were entitled to an assumption that someone employed by the Moving Defendants had committed a Fourth Amendment violation (which is not the case):

> it is not enough for a §1983 plaintiff merely to identify conduct attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997)(emphasis included). In order for local government to be liable under §1983 on an inadequate training theory, Plaintiffs must show: 1) that training was actually inadequate, 2) the government entity was deliberately indifferent to the rights of others in adopting those training practices, to the extent that the failure to train reflects a deliberate or conscious choice, and 3) the "alleged deficiency in the …training…actually caused the [Plaintiff's] injury." *Parrish v Ball*, 594 F. 3d 993, 997 (8th Cir. 2010)(citation omitted). In order to state any claim under §1983, Plaintiffs must show acts taken "under color of law" deprived them of a constitutional right. *See Magee v. Trs. of the Hamline Univ.*, 747 F.3d. 532, 535 (8th Cir. 2014)(citation omitted). Plaintiffs simply cannot do any of this, and there is no evidence whatsoever that the Moving Defendants acted as the "moving force" by deliberately failing to train Roper, resulting in him acting under color of law to commit a Fourth Amendment injury. Even if it made sense to pretend that Roper was acting as a law enforcement officer for the City during this incident (and as discussed further below, it does not), Plaintiffs' failure to train argument is easily dismissed because the state, and not the City, controls what training is required to qualify as a law enforcement officer. § 590.010-590.1040, R.S.M.o. Missouri law enforcement officer licensure requirements are determined by the Peace Officer Standards and Training (POST) Commission. *See* § 590.040 R.S.Mo.; § 590.050 R.S.Mo. The mere fact that someone who is already a licensed law enforcement officer under state law may later receive additional, on-the-job training after being hired by a municipality, does not change that analysis, and in *Snider*

*v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014), the Eighth Circuit Court of Appeals explained as to the City of Cape Girardeau that:

> Cape Girardeau was not responsible for training Officer Peters. Instead, state law requires that all officers be trained by the Missouri Department of Public Safety. Further, Officer Peters participated in the required and state-approved 600-hour initial training program at Southeast Missouri State University and received continuing education training from approved providers. Cape Girardeau was not responsible for the training program's curriculum. Thus, we cannot say the district court erred in holding that Cape Girardeau was not deliberately indifferent to Snider's constitutional rights.

*Id*. at 1160-61. After Chief Bradwell became the Chief of Police, he hired Roper as a Training Reserve Officer. Ex. 5, 18:21-19:8. The City's Training Reserve Officers are *already* licensed law enforcement officers pursuant to Missouri law and subject to POST requirements. Ex. 5, 24:1-9. Roper was also already a reserve deputy with the Ripley County's Sheriff's Office and additionally worked for an emergency response service. Ex. 1, 54:17-55:13. Roper met POST firearm qualifications through the Ripley County Sheriff's Office before he was hired by the City. Ex. 5, 24:10-15, 28:17-29:12. The City's Training Reserve Officers receive on-the-job training before they become a regular Reserve Officer. Ex. 5, 19:12-16. After a full-time field training officer recommends that a Training Reserve Officer is ready to be on their own, the Chief may evaluate them and put them on the City's regular reserve list. Ex. 5, 20:23-21:6-8. Accordingly, under controlling Eighth Circuit precedent and the statutes of Missouri, the Moving Defendants are not, as a matter of law, responsible for training Roper as a law enforcement officer and cannot be liable under a §1983 failure to train theory. Further, under any failure to train theory, Plaintiffs would have to be able to show that, "…in light of the duties assigned to [the] specific

7

officers…the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers…can reasonably be said to have been deliberately indifferent to the need." *Parrish*, 594 F.3d at 998 (*quoting City of Canton*, *supra*, 489 U.S. at 390). In other words, even if Plaintiffs could show that a particular officer was "unsatisfactorily trained," this "will not alone suffice." *Id*. Plaintiffs must additionally be able to demonstrate that the City exhibited "deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision." *Id*. (emphasis by *Parrish*). Plaintiffs cannot point to any facts to show the Moving Defendants were deliberately indifferent to the risk that officers were likely to improperly shoot loose dogs in violation of the Fourth Amendment. Ex. 6, INT#8, #9; Ex. 7, INT#8, #9. Plaintiffs cannot even argue their own loose dogs demonstrate the City disregarded this particular risk, without contradicting their own testimony that their dogs were only loose during this incident because their bigger dog "busted the door," and that he had never done so before. Ex. 3, 57:25-58-7; Ex. 4, 11:16-20. In any event, there is also nothing to suggest that a lack of training resulted in Roper committing any complained of act "under color of law." In that vein, absent any relationship whatsoever between the officer's conduct and his duties as an officer, the officer cannot be acting under color of law. *See Magee v. Trs. of the Hamline Univ.*, 747 F.3d. 532, 535 (8th Cir. 2014)(citation omitted). "Factors include: whether the officer is on duty and in uniform, the motivation behind the officer's actions, whether the officer had access to the victim because of his position, and whether the officer threatened official conduct in the future." *Id*. (citation omitted). While Roper was a Training Reserve

Officer for the City, although he was a licensed law enforcement officer under Missouri law, he did not have a badge, commission card, or department firearm from the City. Ex. 5, 23:10-24:9. Roper took an oath of office to be  Training Reserve Officer for the City on Jan. 30, 2019, and between that date and the incident at issue in this case, Roper had only worked approximately three days, and was still a Training Reserve Officer. Ex. 1, 45:8-9, 46:25-47:2; Ex. 5, 19:16-20:2. On February 22, 2019, Roper and his wife Donna went for a social visit at her father's home. Ex. 1, 12:20-24, 54:2-6; Ex. 2, 14:9-11. Logically, Roper did not wear a uniform for this social visit with his father-in-law. Ex. 1, 53:19-20; Ex. 3, 60:9-11; Ex. 4, 14:21-23. That social visit did not have any connection with Roper being a Training Reserve Officer for the City. Ex. 1, 54:7-9. After that social visit, Roper and Donna got into their personal vehicle to leave. Ex. 1, 54:2-6; Ex. 2, 16:7-9. Roper was driving their son's Ford Escape. Ex. 1, 20:6-7; Ex. 2, 13:24-14:2; Ex. 3, 59:22-23. Donna was in the passenger's seat. Ex. 1, 20:13-17; Ex. 2, 14:3-5. To be clear, this Ford Escape was not a police vehicle. Ex. 1, 53:14-18; Ex. 3, 35:19-20; Ex. 4, 15:4-5. When Roper left his father-in-law's home, he was not on his way to go work for the City. Ex. 1, 54:10-12. As they approached the intersection of Independence Street and Dale, Roper saw his father-in-law's dog "Draco" near the middle of the road. Ex. 1, 19:2-21:3. There were two dogs biting and fighting Draco. Ex. 1, 21:16-21; Ex. 2, 16:9-12. This occurred approximately one block from the home of Donna's father, and in front of the house where the Plaintiffs were living at the time. Ex. 1, 34:6-9; Ex. 2, 12:20-21. At the time of this incident, Plaintiffs were living with Plaintiff Jennifer Mesey's father at 1512 Dale Street. Ex. 3, 9:7-11. Roper and Donna knew both dogs belonged to the Plaintiffs. Ex. 1, 24:14-19; Ex. 2, 16:18-19. On an earlier

date, Roper had personally observed both those dogs attack Draco while Draco was in his father-in-law's yard. Ex. 1, 22:6-12. On seeing those same two dogs again attacking Draco, this time in the street, Roper stopped the vehicle, stepped out, and yelled at the dogs to get off Draco. Ex. 1, 21:6-9; Ex. 2, 17:11. Donna also yelled at the dogs. Ex. 2, 18:1-2. Neither of the Plaintiffs' dogs would let go of Draco. Ex. 1, 26:16-17. Roper was carrying his personal firearm, a Springfield XD-S. Ex. 1, 13:14-16. This was Roper's personal weapon, and the City did not give him that gun. Ex. 1, 53:21-54:1; Ex. 5, 32:22-33:8. Roper fired a warning shot into the ground. Ex. 1, 26:17-18. The Plaintiffs argue that this shot hit the smaller of their two dogs. Ex. 3, 43:1-3. Roper disagrees. Ex. 1, 37:14-16. Either way, the smaller dog ran off after that shot. Ex. 1, 29:7-11; Ex. 2, 18:7-9. However, the sound of that gunshot did not deter the bigger dog, and it remained. Ex. 29:17-31:7, 49:22-50:12; Ex. 2, 11-15, 20:12-16. At this point, Donna was behind Roper. Ex. 1, 27:8-10. Donna then walked around Roper to try and coax the remaining, bigger dog to let go of Draco. Ex. 1, 29:18-20; Ex. 2, 18:7-11. The bigger dog weighed approximately 85 lbs. Ex. 3, 17:13-14; Ex. 6, INT#1. Roper and Donna were approximately 3 to 5 feet away from the bigger dog, and it acted aggressively towards Donna. Ex. 1, 30:6-9; Ex. 2, 18:11-23. The bigger dog, which again, was not scared of a gunshot and weighed around 85 lbs, bared its teeth, barked, its hackles were raised, its tail was stiff, and it started approaching Donna. Ex. 29:17-31:7, 49:22-50:12; Ex. 2, 11-15, 20:12-16. Roper pulled Donna behind him and shot the bigger dog. Ex. 1, 47:21:48:3; Ex. 2, 11-15. Clearly, this incident had nothing to do with Roper's work as a Training Reserve Officer for the City, and there is no evidence that Roper was on duty for the City at the time. Ex. 1, 55:14-22; Ex. 3, 41:20-22. It is also worth noting that

police officers are not "animal control," and typically enforce municipal ordinances by issuing citations. Ex. 5, 46, 7-18. Roper was not trying to enforce leash laws. Ex. 1, 45:25-46:3. Roper did not place the Plaintiffs under arrest or issue either of them a ticket. Ex. 1, 56:17-21.

Finally, in this regard, Plaintiffs also are not able to argue that Roper's actions rose to the level of a constitutional right violation when they did not even see the incident. Ex. 4, 34:12-16. They were not present to witness *any* of these events, and by the time the Plaintiffs came out, Donna had already started taking Draco to her father's home, and was no longer in danger from Plaintiffs' dogs. Ex. 2, 24:18-20. Plaintiffs were at home during the incident but did not come outside until *after* they heard two gunshots. Ex. 3, 30:15-23; Ex. 4, 11:1-6. By the time Plaintiff Robin Mesey stepped outside, the bigger dog was already down. Ex. 3, 30:22-31:4. Plaintiff Jennifer Mesey came out after that. Ex. 3, 38:10-11; Ex. 4, 11:24-12:6. Thus, even Plaintiffs' arguments that Roper's actions were unreasonable because there was no danger, are all purely speculative, and in any case are insufficient as a matter of law to prevent summary judgment. *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

b. **Count III - Plaintiffs Cannot Use *Respondeat Superior* to Establish a §1983 Municipal Claim**

Plaintiffs have persisted in litigating Count II despite the facts demonstrating that this is a frivolous claim. In contrast, Plaintiffs' Count III, which expressly asserts §1983 liability based on *respondeat superior*, has been patently frivolous since this case commenced, and it is well-established that there is no *respondeat superior* liability under §1983. *See e.g. Szabla*

*v. City of Brooklyn Park*, 486 F.3d 385, 397 (8th Cir.2007)(no liability merely because official employs the individual who allegedly violated the plaintiff's constitutional rights).

## II.   <u>CONCLUSION</u>

Plaintiffs cannot represent to this Court that existing law, or a non-frivolous argument for reversal of existing law, supports their contentions, and they have utterly failed to assert any facts that would support a § 1983 municipal liability claim. For the foregoing reasons, the Moving Defendants are entitled to Summary Judgment on all issues raised in Plaintiffs' Complaint.

Respectfully submitted,

**KECK & PHILLIPS, L.L.C.**

By: */s/ Damon S. Phillips* __
Damon S. Phillips #52901
3140 E. Division
Springfield, Missouri 65802
Phone: 417-890-8989
Fax: 417-890-8990
Email: damon@kpwlawfirm.com
*Attorneys for Defendants City of Van Buren, Missouri and Chief Alonzo Bradwell in his official capacity*

12

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned certifies that a copy of the foregoing document was served by ☑ Filing electronically (ECF) on this 3rd day of December, 2020 to the following persons:

James W. Schottel, Jr.
906 Olive St., PH
St. Louis, Mo 63101
jwsj@schotteljustice.com

Portia C. Kayser
1010 Market St., Ste 1650
St. Louis, Mo 63101
pkayser@fisherpatterson.com

/s/ *Damon S. Phillips*
*Attorney*