UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ROBIN MESEY and <br> JENNIFER MESEY, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF VAN BUREN, MISSOURI, <br> ALONZO BRADWELL, *in his official Capacity as Chief of Police*, and <br> CHARLES ROPER, *in his individual capacity*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:19-CV-71 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS OF DEFENDANTS CITY OF VAN BUREN, MISSOURI AND ALONZO BRADWELL, IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE**

COME NOW Defendants City of Van Buren, Missouri ("City") and Alonzo Bradwell, in his official capacity as Chief of Police ("Chief Bradwell"), by and through their counsel, Keck & Phillips, L.L.C., and pursuant to Federal Rule of Civil Procedure 56, and along with their Motion for Summary Judgment, and Memorandum in Support of Motion for Summary Judgment, both of which are incorporated by reference herein, state the following in support of their Motion for Summary Judgment:

**EXHIBITS**

**Ex. 1 – Charles Roper deposition of Aug. 25, 2020 transcript selections**

**Ex. 2 – Donna Roper deposition of Oct. 30, 2020 transcript selections**

**Ex. 3 – Robin Mesey deposition of Aug. 19, 2020 transcript selections**

**Ex. 4 – Jennifer Mesey deposition of Aug. 19, 2020 transcript selections**

1

**Ex. 5 – Alonzo Bradwell deposition of Oct. 30, 3030 transcript selections**

**Ex. 6 –Robin Mesey Answers to Interrogatories #1, #8 and #9 of Moving Defendants**

**Ex. 7 – Jennifer Mesey Answers to Interrogatories #8 and #9 of Moving Defendants**

## UNCONROVERTED MATERIAL FACTS

1. **After Alonzo Bradwell (Chief Bradwell) became the Chief of Police, Charles Roper (Roper) was hired as a Training Reserve Officer for the City of Van Buren, Missouri (the City). Ex. 5, 18:21-19:8.**

2. **The City's Training Reserve Officers are already licensed law enforcement officers pursuant to Missouri law and subject to POST requirements prior to being hired. Ex. 5, 24:1-9.**

3. **At the time that he was hired to be a Training Reserve Officer for the City Roper was already a reserve deputy with the Ripley County's Sheriff's Office and also already worked for an emergency response service. Ex. 1, 54:17-55:13.**

4. **Roper met POST firearm qualifications through the Ripley County Sheriff's Office prior to being hired by the City. Ex. 5, 24:10-15, 28:17-29:12.**

5. **The City's Training Reserve Officers receive additional on-the-job training before they become a regular Reserve Officer. Ex. 5, 19:12-16.**

6. **After a full-time field training officer recommends that a Training Reserve Officer is ready to be on their own, the Chief may evaluate them and put them on the City's regular reserve list. Ex. 5, 20:23-21:6-8.**

2

7. **Plaintiffs cannot point to any facts to show the Moving Defendants were deliberately indifferent to the risk that officers were likely to improperly shoot loose dogs in violation of the Fourth Amendment. Ex. 6, INT#8, #9; Ex. 7, INT#8, #9.**

8. **Plaintiffs are not aware of any incident involving an on-duty City police officer shooting a dog. Ex. 6, INT#8, #9; Ex. 7, INT#8, #9.**

9. **Plaintiffs are not aware of any incident involving an off-duty City police officer shooting a dog. Ex. 6, INT#8, #9; Ex. 7, INT#8, #9.**

10. **The incident at issue in this lawsuit occurred on February 22, 2019. Doc. 1, para. 14.**

11. **Plaintiffs testified that their dogs were only loose during the incident at issue in this lawsuit because their bigger dog "busted the door," and that he had never done so before. Ex. 3, 57:25-58-7; Ex. 4, 11:16-20.**

12. **There is no evidence that a lack of training resulted in Roper shooting the Plaintiffs' dogs "under color of law."** *See* **Ex. 5, 23:10-24:9.**

13. **While Roper was a Training Reserve Officer for the City, although he was a licensed law enforcement officer under Missouri law, he did not have a badge, commission card, or department firearm from the City. Ex. 5, 23:10-24:9.**

14. **Roper took an oath of office to be Training Reserve Officer for the City on Jan. 30, 2019, and between that date and February 22, 2019, had only worked a total of approximately three days for the City, and was still a Training Reserve Officer. Ex. 1, 45:8-9, 46:25-47:2; Ex. 5, 19:16-20:2.**

3

15. **On February 22, 2019, Roper and his wife Donna Roper (Donna) went for a social visit at her father's home. Ex. 1, 12:20-24, 54:2-6; Ex. 2, 14:9-11.**

16. **Roper did not wear a uniform for this social visit with his father-in-law. Ex. 1, 53:19-20; Ex. 3, 60:9-11; Ex. 4, 14:21-23.**

17. **That social visit did not have any connection with Roper being a Training Reserve Officer for the City. Ex. 1, 54:7-9.**

18. **After that social visit, Roper and Donna got into their personal vehicle to leave. Ex. 1, 54:2-6; Ex. 2, 16:7-9.**

19. **Roper was driving their son's Ford Escape. Ex. 1, 20:6-7; Ex. 2, 13:24-14:2; Ex. 3, 59:22-23.**

20. **Donna was in the passenger's seat of her son's Ford Escape. Ex. 1, 20:13-17; Ex. 2, 14:3-5.**

21. **The Ford Escape that Roper was driving, and that Donna was a passenger in, was not a police vehicle. Ex. 1, 53:14-18; Ex. 3, 35:19-20; Ex. 4, 15:4-5.**

22. **When Roper left his father-in-law's home, he was not on his way to go work for the City as a Training Reserve Officer. Ex. 1, 54:10-12.**

23. **As Roper and Donna approached the intersection of Independence Street and Dale, Roper saw his father-in-law's dog "Draco" near the middle of the road. Ex. 1, 19:2-21:3.**

24. **There were two dogs biting and fighting Draco. Ex. 1, 21:16-21; Ex. 2, 16:9-12.**

25. **This occurred approximately one block from the home of Donna's father, and in front of the house where the Plaintiffs were living at the time. Ex. 1, 34:6-9; Ex. 2, 12:20-21.**

26. **At the time of this incident, Plaintiffs were living with Plaintiff Jennifer Mesey's father at 1512 Dale Street. Ex. 3, 9:7-11.**

27. **Roper and Donna knew both dogs belonged to the Plaintiffs. Ex. 1, 24:14-19; Ex. 2, 16:18-19.**

28. **On an earlier date, Roper had personally observed both those dogs attack Draco while Draco was in his father-in-law's yard. Ex. 1, 22:6-12.**

29. **On seeing those same two dogs again attacking Draco, this time in the street, Roper stopped the vehicle, stepped out, and yelled at the dogs to get off Draco. Ex. 1, 21:6-9; Ex. 2, 17:11.**

30. **Donna also yelled at the dogs to get off Draco. Ex. 2, 18:1-2.**

31. **Neither of the Plaintiffs' dogs would let go of Draco. Ex. 1, 26:16-17.**

32. **Roper was carrying his personal firearm, a Springfield XD-S. Ex. 1, 13:14-16.**

33. **The firearm that Roper was carrying during this incident on February 22, 2019 was his personal weapon, and the City did not give him that gun. Ex. 1, 53:21-54:1; Ex. 5, 32:22-33:8.**

34. **Roper used his personal weapon to fire a warning shot into the ground. Ex. 1, 26:17-18.**

35. **The smaller dog of the two dogs attacking Draco ran off after that shot. Ex. 1, 29:7-11; Ex. 2, 18:7-9.**

36. **The bigger dog attacking Draco remained, and did not run off after Roper fired this shot. Ex. 1, 29:17-31:7, 49:22-50:12; Ex. 2, 11-15, 20:12-16.**

37.  **At this point, Donna was behind Roper, and then walked around Roper to try and coax the remaining, bigger dog to let go of Draco. Ex. 1, 27:8-10, 29:18-20; Ex. 2, 18:7-11.**

38. **The remaining, bigger dog weighed approximately 85 lbs. Ex. 3, 17:13-14; Ex. 6, INT#1.**

39. **Roper and Donna were approximately 3 to 5 feet away from the bigger dog, and it acted aggressively towards Donna. Ex. 1, 30:6-9; Ex. 2, 18:11-23.**

40. **The bigger dog bared its teeth, barked, its hackles were raised, its tail was stiff, and it started approaching Donna. Ex. 29:17-31:7, 49:22-50:12; Ex. 2, 11-15, 20:12-16.**

41. **Roper pulled Donna behind him and used his personal firearm to shoot the bigger dog. Ex. 1, 47:21:48:3; Ex. 2, 11-15.**

42. **There is no evidence that Roper was working as a Training Reserve Officer for the City or on duty during the incident at issue in this case. Ex. 1, 55:14-22; Ex. 3, 41:20-22.**

43. **Police officers are not "animal control," and typically enforce municipal ordinances by issuing citations. Ex. 5, 46, 7-18.**

44. **Roper was not trying to enforce leash laws. Ex. 1, 45:25-46:3.**

45. **Roper did not place the Plaintiffs under arrest or issue either of them a ticket. Ex. 1, 56:17-21.**

6

46. Plaintiffs were not present to witness and did not see the interactions between their dogs and Roper on February 22, 2019. Ex. 4, 34:12-16.

47. Plaintiffs were at home during the incident but did not come outside until after they heard two gunshots. Ex. 3, 30:15-23; Ex. 4, 11:1-6.

48. By the time the Plaintiffs came out, the bigger dog was already down and Donna had started taking Draco to her father's home, and was no longer in danger from Plaintiffs' dogs. Ex. 2, 24:18-20; Ex. 3, 30:22-31:4, 38:10-11; Ex. 4, 11:24-12:6.

Respectfully submitted,

**KECK & PHILLIPS, L.L.C.**

By: */s/ Damon S. Phillips*  __
Damon S. Phillips #52901
3140 E. Division
Springfield, Missouri 65802
Phone: 417-890-8989
Fax: 417-890-8990
Email: damon@kpwlawfirm.com
*Attorneys for Defendants City of Van Buren, Missouri and Chief Alonzo Bradwell in his official capacity*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served by ☑ Filing electronically (ECF) on this 3rd day of December, 2020 to the following persons:

James W. Schottel, Jr.
906 Olive St., PH
St. Louis, Mo 63101
jwsj@schotteljustice.com

Portia C. Kayser
1010 Market St., Ste 1650
St. Louis, Mo 63101
pkayser@fisherpatterson.com

Courtesy copy of exhibits sent by USPS first class mail, postage pre-paid to the Court at the following address:
Rush Hudson Limbaugh Sr.
U.S. Courthouse
555 Independence Street, Suite 400
Cape Girardeau, Mo 63703

/s/ *Damon S. Phillips*
*Attorney*