UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ROBIN MESEY and JENNIFER MESEY, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CITY OF VAN BUREN, MISSOURI, ) <br> ALONZO BRADWELL, in his official ) <br> capacity as Chief of Police, and CHARLES ) <br> ROPER, ) <br> ) <br>     Defendants. ) | 1:19-cv-00071 |

## DEFENDANT CHARLES ROPER'S MOTION FOR SUMMARY JUDGEMENT

COMES NOW Defendant Charles Roper, by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56, and for his Motion for Summary Judgement, states as follows:

## INTRODUCTION

1. Plaintiffs filed a Complaint in this Court against the City of Van Buren, Missouri; Chief Alonzo Bradwell, and Mr. Roper on May 4, 2019. [Doc. #1]. In their Complaint, Plaintiffs asserted a Fourth Amendment claim against Mr. Roper under and through 42 U.S.C. § 1983 (Count I), as well as a Fourteenth Amendment claim against Van Buren and Chief Bradwell, also through § 1983 on a theory of *respondeat superior* (Counts II & III). *Id*. Only Count I is alleged as against Mr. Roper. *Id*.

2. On October 10, 2019, this Court filed a Case Management Order for this case. [Doc. #23]. Pursuant to that Order, discovery is now closed, and this matter is therefore ripe for Summary Judgement. *Id*.

3. Plaintiff allege that Charles Roper, acting in his capacity as a police officer, shot and killed their dogs, and is therefore liable for a deprivation of their property rights under the Fourth Amendment. [Doc. #1.]

4. Although Charles was a reserve officer in training for the City of Van Buren, Missouri, at the time of incident, he was not on-duty, nor was the incident related to his role as a police officer.

5. For the reasons set forth herein, and the contemporaneously filed Memorandum of Law in Support, Charles is entitled to summary judgement on Count I, the only count pertaining to him.

## BACKGROUND

6. Charles Roper and his wife, Donna, had just left a visit with Donna's father when they came upon Plaintiffs' dogs attaching Donna's father's beloved husky mix, Draco. Plaintiffs' dogs were "ripping him apart." Plaintiffs' larger dog (Max), who weighed about 85 pounds was on top of Draco with his jaws around Draco's neck. Plaintiff's smaller dog (Nina), who weighed about 65 pounds was biting Draco's feet. There was blood coming from Draco's neck.

7. Charles and Donna pulled over and attempted to get Plaintiffs' dogs to release Draco by yelling at them, but that did not work. Charles drew his personal firearm and shot a warning shot into the ground to frighten the attacking dogs. This worked to frighten the smaller dog, who ran from the scene. It did not deter the larger dog, who continued to attack Draco.

8. Donna began to approach the dogs to try to coax the larger dog off of Draco, while Charles cleared a jam in his firearm. When she was between three and five feet from the dogs, the larger attacking dog, turned his attention to Donna.

9. The larger dog showed his teeth, barked, held his tail stiff, and raised his hackles, all while staring at Mrs. Roper. The dog then began to come toward Donna. Charles pulled Donna behind him and shot the larger dog, killing it.

10. Sometime prior to this incident, Charles and Donna had witnessed the larger dog attempt to attack Donna's father, Mr. Walberg. When the dog lunged towards Mr. Walberg, Draco stepped in the way of the attack, and the two dogs fought until Plaintiffs' son dragged the attacking dog away. Draco had bite wounds all over his face from the attack. When Charles saw the same dog approaching Donna in the same manner, he recognized these signals as a sign of imminent attack.

11. The gun used by Charles was not his police weapon and it held 8 rounds. The investigating officers recovered one spent bullet in the ground (the warning shot), one unspent bullet (the ejected bullet from clearing the gun), and returned five rounds to Charles after the investigation. These seven bullets, along with the bullet in the larger dog, accounted for all eight rounds.

12. Although the smaller dog ran away from the attack after Mr. Roper fired his warning shot into the ground, when the dog returned home, she had a bullet lodged in one of her legs. This bullet cannot have come from Charles' weapon as all eight rounds in his weapon were accounted for and Plaintiffs confirmed they heard only 2 shots. The smaller dog was diagnosed with heartworms more than a year after the incident, and died within a month of her diagnosis.

13. Neither of Plaintiffs' dogs were leashed during the attack; Plaintiffs did not have a wire or electric fence to restrain the dogs to their property. Plaintiffs had been cited for failing to leash their dogs three times prior to the attack. Even after the incident, Plaintiffs allowed their dogs

to roam free. A third dog owned by Plaintiffs attacked another neighbor within 6 months of this incident.

14. Charles was coming from a personal family visit at the time of the incident, he was in his son's vehicle with his wife, was not in uniform, was not using his police weapon, was not coming from or going to any police activity and did not issue any citations or otherwise act in any capacity as a law enforcement officer.

## LEGAL STANDARD

15. "Summary judgement is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint*, 736 F.3d 1134, 1136 (8th Cir. 2013), citing to Fed. R. Civ. P. 56(c). By its plain language, Rule 56(c) requires entry of summary judgement "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Id*. at 323. However, that party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id*. at 325. Instead, "the burden on the moving party may be discharged by 'showing'… that there is an absence of evidence to support the nonmoving party's case." *Id*. citing to Fed. R. Civ. P. 56(c).

16. If the moving party meets this burden, then the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985), citing to Fed. R. Civ. P. 56(e). "[T]he mere existence of some alleged factual dispute between the parties" will not defeat an otherwise properly

supported motion for summary judgement. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011), citing to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (internal quotation marks omitted).

## ARGUMENT

17. 42 U.S.C. § 1983 "imposes liability for certain actions taken 'under color of' law that deprives a person 'of a right secured by the Constitution and laws of the United States.'" *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005), citing to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982). A "public employee acts under color of law when he 'exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Johnson v. Philips*, 664 F.3d 232, 239-40 (8th Cir. 2011), citing to *West v. Atkins*, 487 U.S. 42, 49 (1988).

18. Officials' acts in "the ambit of their personal pursuits are plainly excluded" from the scope of § 1983. *Dossett*, 399 F.3d at 949, citing to *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality opinion). Factors include whether the officer is on duty and in uniform, the motivation behind the officer's actions, whether the officer had access to the victim because of his position, and whether the officer threatened official conduct in the future. *Magee v. Trustees of Hamline University, Minn.*, 747 F.3d 532, 535 (8th Cir. 2014), citing to *Roe*, 128 F.3d at 1216.

19. In a Fourth Amendment claim, "[w]hat matters is the intrusion on the people's security from governmental interference." *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir. 1994), citing to *Soldal v. Cook County*, 506 U.S. 56, ---- (1992). The destruction of property is considered a seizure under the Fourth Amendment because that destruction "by *state officials* poses as much of a threat, if not more, to the people's right to be 'secure…in their effects' as does the physical taking of them." *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994) (emphasis added), *citing to* U.S. Const.

Amend. IV, *overruled on other grounds by Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002).

20. Although Mr. Roper is a reserve officer for the Van Buren City Police Department, he was not on-duty during this incident, was not in uniform, was not driving a police vehicle, and was not acting in any capacity as a law enforcement officer. Rather, he was leaving a personal family visit, in his son's vehicle, with his wife, when he happened upon the dogs attacking his father in law's pet.

21. Since Charles was acting in the ambit of his personal pursuits, and not under coloe of law when he scared off the smaller of Plaintiffs' dogs and shot the larger dog before it could attached his wife, this Court should grant summary judgement for Mr. Roper for Count I.

22. Furthermore, a defendant who shows, by a preponderance of the evidence, that they were in "reasonable apprehension of imminent harmful contact by the dog or [were] acting to prevent such imminent harmful contact against another person by the dog" is absolutely protected from civil liability for the killing or injuring of that dog. MO ST § 273.033(1).

23. "The court shall award attorney's fees, court costs, and all reasonable expenses incurred by the defendant in defense of any…civil action brought by a plaintiff if the court finds that the defendant has an absolute defense as provided in subsection 1…" *Id*. at (3).

24. Prior to the February 22, 2019 incident, Charles had observed the larger dog prepare to attack Mr. Walberg; Charles was therefore familiar with the signals the larger dog gave prior to attacking a human. On February 22, 2019, Charles observed the larger dog bark, show his teeth, and stare at his wife, all with his hackles raised. Charles acted to defend Donna and himself as he was in reasonable apprehension of imminent harm.

25. Charles is therefore absolutely protected from civil liability.

26.     In the alternative, Charles is entitled to partial summary judgment as he is not responsible for the destruction of Plaintiff's smaller dog.

27.     All eight rounds were recovered from Charles' firearm, so he could not have been responsible for the bullet lodged in the smaller dog's leg. Moreover, the dog died more than a year after the incident from contracting heartworms.

28.     However, when Plaintiffs found the smaller dog, she was not able to use all four of her legs to walk.

29.     Because it is impossible in both time and means for Charles to have injured Plaintiffs' smaller dog, there is no genuine issue of material fact related to Plaintiffs' smaller dog, and Charles is entitled to partial summary judgement on this issue.

WHEREFORE, based upon the foregoing, Defendant Charles Roper respectfully prays this Court issue its Order granting summary judgement in favor of Defendant on Count I, entering an award of attorney's fees and costs, and such other and further relief as this Court deems just and appropriate.

Date: December 4, 2020                    **Respectfully submitted**,

FISHER PATTERSON SAYLER & SMITH, L.L.P.

*/s/ Portia C. Kayser*
Portia C. Kayser, #63527MO
1010 Market Street, Suite 1650
St. Louis, MO 63101
Telephone and Fax: (314) 561-3675
pkayser@fpsslaw.com

*Attorneys for Defendant Charles Roper*

**Certificate of Service**

       The undersigned hereby certifies that a true and correct copy of the foregoing document was filed via the Court's electronic filing system this 4th day of December, 2020, and will be served on the following via same:

James W. Schottel, Jr.
Schottel & Associates, PC
906 Olive St., PH
St. Louis, MO 63101
jwsj@schotteljustice.com

*Attorneys for Plaintiff*

Patricia A. Keck
Damon Phillips
Ty Z. Harden
Keck and Austin, LLC
3140 E. Division
Springfield, MO 65802
pat@kpwlawfirm.com
ty@kpwlawfirm.com

*Attorneys for Defendants City of Van Buren, Missouri and Alonzo Bradwell*

                                                 */s/ Portia C. Kayser*