UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBIN MESEY and JENNIFER MESEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19-cv-00071 |
| | ) | |
| CITY OF VAN BUREN, MISSOURI, ALONZO BRADWELL, in his official capacity as Chief of Police, and CHARLES ROPER, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGEMENT**

COMES NOW Defendant Charles Roper, by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and E.D. Mo. L.R. 7-4.01, and for his Memorandum in Support of his Motion for Summary Judgement, states as follows:

**INTRODUCTION**

On February 22, 2019, Mr. Charles Roper and his wife, Donna, went to visit his father-in-law, Jeffrey Walberg, who lives in the same neighborhood as Plaintiffs. While leaving Mr. Walberg's residence, Charles and Donna observed two dogs attacking Mr. Walberg's beloved blond husky mix, Draco. Charles exited his vehicle and fired a warning shot at the dogs when his yells did not stop the attacking dogs. Although this scared away the smaller of the two attacking dogs, the larger dog then focused his attention on Donna, who had then exited the vehicle to help break the dogs apart. The larger dog showed signs of an imminent attack and in order to protect his wife, Charles killed the larger dog.

Although Charles works as a police officer for the City of Van Buren, Missouri, he was not on-duty during this incident, nor was the incident related to his role as a police officer. Nevertheless, Plaintiffs filed the instant suit asserting a § 1983 claim on the basis of the Fourth Amendment against Charles. For the reasons set forth herein, Charles is entitled to summary judgement on Count I, the only count pertaining to him.

## BACKGROUND

While leaving his father-in-law's house on February 22, 2019, Charles and his wife, Donna, witnessed two dogs attacking their father-in-law's blond husky mix, Draco. (SOF 1, 3, 4.) The smaller of the two attacking dogs was biting Draco's paws, while the larger of the attacking dogs was gripping Draco's throat with his jaws. (SOF 6.) Charles saw blood on Draco's throat and ear. (SOF 5.)

In order to stop the attack, Charles stopped the car he was driving, exited the vehicle, and began yelling at the dogs. (SOF 9). When this failed to startle either attacking dog, Charles fired a warning shot from the Springfield XD-S firearm he carried that day. (SOF 11). Charles's shot did not hit either dog, as Charles observed grass fly from the ground where the bullet hit. *Id*. Responding officers later recovered the spent bullet from this warning shot. (SOF 13). This warning shot caused the smaller attacking dog run away from the scene of the incident. (SOF 17). However, the gun then "jammed," as the empty cartridge did not properly exit the gun; Charles cleared the jam prior to returning his attention to the dogs. (SOF 14-15). The ejected bullet was recovered by responding officers after the incident. (SOF 16).

As the smaller attacking dog fled, Donna exited the vehicle and joined Charles at the scene of the incident. (SOF 10, 18). When the larger attacking dog did not release Draco after the warning shot, Donna stated she was going to break up the fight. (SOF 18). However, the larger attacking

dog then turned his attention to Donna. (SOF 19-20). Charles then pulled Donna behind him, inserting himself between her and the larger attacking dog. (SOF 22).

Charles had previously observed the same larger attacking dog prepare to harm a human, when the dog had attempted to attack Mr. Walberg on a separate occasion. (SOF 8, 21). At that time, the dog displayed hostility and aggression by baring his teeth, barking, holding his tail stiff, and raising his hackles. *Id*. During the February 22, 2019, incident at issue in this case, the larger attacking dog displayed each of these signals while staring directly at Donna. (SOF 21). In order to protect his wife and himself, Charles fired again, this time killing the larger attacking dog. (SOF 23-24).

When Plaintiffs discovered the smaller attacking dog sometime after the incident, she was not able to use one of her legs. (SOF 29.) A veterinarian later x-rayed the smaller dog and determined that there was a bullet lodged in her leg. *Id*. More than a year after the incident, the dog was diagnosed with heartworms. (SOF 30.) She died from heartworms a month after her diagnosis. *Id*. Nevertheless, Plaintiffs assert that Charles shot the smaller dog and killed her. (Doc. #1, at ¶ 15.)

Plaintiffs did not see any part of the incident, however, they did confirm that they only heard two shots fired; consistent with Charles and Donna's account. (SOF 27.) Furthermore, when responding officers arrived at the scene, they found two casings, one spent bullet, and a live bullet; again consistent with Charles firing two shots and clearing a jam in his firearm. (SOF 13, 16.) Mr. Roper's firearm held eight bullets total. (SOF 12.) When officers returned Charles's firearm and ammunition to Mr. Roper, they returned the five remaining bullets. (SOF 28). This, too, is consistent with Charles firing two shots and clearing a jam in his firearm.

Since the February 22, 2019, incident, Plaintiffs have continued to allow their remaining dog to roam the neighborhood unrestrained. (SOF 34-35.) As a result, Plaintiffs' dogs have attempted to attack other neighbors. *Id*. Specifically, when one of Plaintiffs' neighbors drove down the street on his motorcycle, Plaintiffs' dog chased him and bit at his clothing. *Id*. When an officer arrived at Plaintiffs' house following the incident, he observed the dog in question running freely, not enclosed in a fence or on a leash. *Id*. While Plaintiffs were not cited for violating local leash ordinances on that instance, they had been cited three times prior. (SOF 32.)

Although Charles worked as a reserve deputy and probationary police officer for the City of Van Buren at the time of the incident, he was off-duty. (SOF 36.) Charles and Donna were visiting with family, Charles was not in uniform, Charles and Donna were driving their son's vehicle, and Charles used his personal firearm for his act of self-defense. (SOF 36-40.) Furthermore, Charles did not act in any capacity as an officer such as issuing a citation to Plaintiffs for having their dogs unleashed and unconfined in violation of local ordinance, nor did he ever threaten to do so. (SOF 40-41).

On May 4, 2019, Plaintiffs filed their Complaint in this Court against Mr. Roper, the City of Van Buren, and the Van Buren Chief of Police, Alonzo Bradwell. (Doc. #1). The Complaint alleges a violation of the Fourth Amendment under 42 U.S.C. S 1983 as against Charles (Count I), as well as a failure to train and *respondeat superior* against Van Buren and Chief Bradwell (Counts II & III). *Id*. This Court entered a Case Management Order for this case on October 10, 2019. (Doc. #23). Pursuant to that Order, discovery is now closed. *Id*. Because Charles was not acting under color of law, and because his actions were taken in reasonable apprehension of imminent harm to his wife, Charles is entitled to summary judgement on Count I. Alternatively, because Plaintiffs

have provided no evidence that Charles is responsible for the injuries to their smaller dog, Charles is entitled to partial summary judgement relating to that dog on Count I.

## STANDARD OF REVIEW

A party is entitled to summary judgement "when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgement as a matter of law." *Crozier v. Wint*, 736 F.3d 1134, 1136 (8th Cir. 2013) citing to Fed. R. Civ. P. 56(c). "[S]ummary judgement is not disfavored and is designed for every action." *Briscoe v. Cnty. Of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) citing to *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) *cert denied*, 132 S. Ct. 513 (2011). By its plain language, Rule 56(c) requires entry of summary judgement "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Id*. at 323. However, that party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id*. at 325. Instead, "the burden on the moving party may be discharged by 'showing'…that there is an absence of evidence to support the nonmoving party's case." *Id*. citing to Fed. R. Civ. P. 56(c).

If the moving party meets its burden, then the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985), citing to Fed. R. Civ. P. 56(e). "[T]he mere existence of some alleged factual dispute between the parties" will not defeat an otherwise properly supported motion for summary judgement. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (internal

quotation marks omitted), citing to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "When a motion for summary judgement is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgement, if appropriate, shall be entered against him." *Matushita,* 475 U.S. at 586.

## ARGUMENT

I. **Plaintiffs § 1983 claim fails as a matter of law because Plaintiffs cannot show that Charles acted under color of state law when defending himself from the larger dog's attack.**

42 U.S.C. § 1983 "imposes liability for certain actions taken 'under color of' law that deprives a person 'of a right to be secured by the Constitution and laws of the United States.'" *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005), citing to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982). A public employee acts under color of law when that employee exercises "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Johnson v. Philips*, 664 F.3d 232, 239-40 (8th Cir. 2011), citing to *West v. Atkins*, 487 U.S. 42, 49 (1988). Therefore, in order for § 1983 to be applicable in a case, the defendant must act or purport to act "in the performance of official duties." *Id*. In fact, officials' actions in "the ambit of their personal pursuits are plainly excluded" from the scope of § 1983. *Dossett*, 399 F.3d at 949, citing to *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality opinion). If a plaintiff is unable to show any actual, or even purported, relationship "between the officer's conduct and his duties as a police officer, the officer *cannot* be acting under color of state law." *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997) (emphasis added). In evaluating whether a defendant acted under color of law, a court will examine whether

the defendant was on-duty and in uniform, the motivation behind the officer's actions, whether the officer had access to the victim because of his position, and whether the officer threatened official conduct against the plaintiff in the future. *Magee v. Trustees of Hamline University, Minn.*, 747 F.3d 532, 535 (8th Cir. 2014), citing to *Roe*, 128 F.3d at 1216.

Similarly, in a Fourth Amendment claim, "[w]hat matters is the intrusion on the people's security from governmental interference." *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir. 1994), citing to *Soldal v. Cook County*, 506 U.S. 56, ---- (1992). The destruction of property is considered a seizure under the Fourth Amendment because that destruction "by *state officials* poses as much of a threat, if not more, to the people's right to be 'secure…in their effects' as does the physical taking of them." *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994) (emphasis added), citing to U.S. Const. Amend. IV, *overruled on other grounds by Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002).[1] A private citizen, acting in his or her private capacity, cannot violate another's Fourth Amendment rights even when destroying that person's property, as the private citizen lacks the coercive power of the state.

Charles was not acting under color of law when he defending himself and his wife from Plaintiffs' larger attacking dog. Although Charles worked for the City of Van Buren Police Department, he was not on-duty during this incident. Charles and Donna drove their son's Ford Escape (not a police vehicle) to visit Donna's father, Mr. Walberg, an activity "in the ambit of his personal pursuits." Charles was not on duty or in uniform; and used his personal firearm. When Charles saw Plaintiffs' dogs attack Draco so viciously he bled from his neck and ear, he was

---

[1] In their Complaint, Plaintiffs cite to *Lesher* and *Fuller* to support their proposition that Charles violated their Constitutional rights when he defended himself from their larger attacking dog. However, these cases each actually stand for the proposition that the destruction of a dog only violates the Fourth Amendment when done by state officials. Specifically, the operative legal issue in *Lesher* was whether the plaintiff's employer, a police department, committed a seizure by destroying a former police dog. In *Fuller*, the court considered whether police destroying a dog could be considered a seizure *at all*.

motivated to break up the fight and save Mr. Walberg's beloved pet. Charles only shot at the larger attacking dog to protect his wife. His motivation to protect both Draco and then, later, his wife, was not connected to his position as a police officer. Finally, although Plaintiffs violated a local ordinance forbidding leaving a dog unleashed and unrestrained, Charles never issued any citations in connection with this incident, nor threatened to do so at a later time. As there is a complete lack of connection to Charles' position as a law enforcement officer, Charles was not acting under color of state law or with the coercive power of the state when he protected Draco, his wife and himself from Plaintiffs' dogs, and he is entitled to summary judgement.

II.   **Because Charles acted in reasonable apprehension of imminent attack from Plaintiffs' dog, he is absolutely protected from liability under MO ST § 273.033.**

If a defendant in a suit for civil liability resulting from injuries to a dog shows, by a preponderance of the evidence, that they were "in reasonable apprehension of imminent harmful contact by the dog or [were] acting to prevent such imminent harmful contact against another person by the dog," that defendant is protected from liability for killing or injuring that dog. R.S. Mo. § 273.033(1).[2] If a plaintiff nevertheless brings a case against such a defendant, "the court shall award attorney's fees, court costs and all reasonable expenses incurred by the defendant" in that case. R.S. Mo. § 273.033(3).

When Charles killed the larger attacking dog, he was acting in reasonable apprehension of imminent harmful contact by the dog against his wife, and himself. While Charles fired his warning shot, Donna left the car, and stood next to Mr. Roper. When the smaller attacking dog ran, the larger attacking dog did not release Draco. Donna moved to attempt to break up the fight between the remaining dogs from 3 to 5 feet away.

---

[2] No court has yet applied this statute in a case.

Charles was intimately familiar with the warning signs the larger attacking dog gave prior to an attack against a human; he had witnessed the dog prepare to attack his father-in-law on an earlier occasion. So, when the dog once again began baring his teeth, holding his tail stiff, raising his hackles, and barking, this time at Mr. Roper's wife, Charles anticipated the dog's next most likely move was an attack against his wife. (SOF 29-30). Charles then pulled Donna behind him, inserting himself between her and the larger attacking dog. (SOF 32). Because Charles stood between the dog and the object of his aggression, Donna, Charles himself may have become the dog's next victim. By killing the larger attacking dog, Charles acted to prevent imminent harmful contact against both himself and his wife. As a result, he is absolutely protected from civil liability for the dog's death, and entitled to summary judgement, attorney's fees, court costs and all reasonable expenses incurred in this case.

### III. In the alternative, Charles is entitled to partial summary judgement on Count I because there is no evidence he is responsible for the smaller attacking dog's injury or death.

Charles is not responsible for the smaller attacking dog's injury, and therefore, he is not liable for such. Charles used three of the eight bullets held in his gun: (1) the warning shot fired into the ground; (2) the bullet ejected to clear the jam; and (3) the shot at the larger dog. The remaining 5 bullets were returned to Charles by the police following their investigation. Since all 8 bullets are accounted for, Charles could not have been responsible for the bullet in the smaller dog's let.

By their own admission, Plaintiffs confirm that Charles only fired two shots during this incident. The police department investigation into this matter further reveals that Charles could not have fired the bullet that entered the smaller attacking dog. When Charles fired his warning shot at the ground, he spent one bullet, which was later recovered by police. Charles's gun then

jammed and when he cleared his jam, his gun ejected one unspent bullet, which was also later recovered by police. When Charles then shot the larger attacking dog, this bullet remained inside the dog. These three bullets, with the additional five bullets returned to Mr. Roper, total the eight bullets Mr. Roper's firearm was capable of holding. The bullet Plaintiffs assert was later found in the smaller attacking dog's leg is an extraneous bullet, which simply did not, and could not, have come from Charles's personal firearm.

Second, the smaller attacking dog's injuries do not align with the sequence of events preceding the injury. For instance, although the smaller attacking dog ran away from Draco after Charles's warning shot, when Plaintiffs took her to the vet, she was unable to use one of her legs. These two things are fundamentally inconsistent, the dog could not have run away from Charles if Charles had shot it in the leg. This indicates that the smaller attacking dog was shot only after she ran from the scene.

Finally, in their Complaint, Plaintiffs allege that Charles is responsible for the smaller attacking dog's death, not just an injury. However, even if it were possible that Charles shot the smaller attacking dog, he was still not responsible for her death. More than one year after this incident, the smaller attacking dog contracted heartworms. This infection killed the smaller attacking dog. Because Plaintiffs have no evidence indicating that Charles is responsible for the smaller attacking dog's injury or death, Charles is alternatively entitled to partial summary judgement on Count I, as pertains to injuries to the smaller attacking dog.

WHEREFORE, based upon the foregoing, Defendant Charles Roper respectfully prays this Court issue its Order granting summary judgement on Count I, entering an award of attorney's fees and costs, and such other and further relief as this Court deems just and appropriate.

Date: <u>December 4, 2020</u>                               **Respectfully submitted**,

FISHER PATTERSON SAYLER & SMITH, L.L.P.

*/s/ Portia C. Kayser*
Portia C. Kayser, #63527MO
1010 Market Street, Suite 1650
St. Louis, MO 63101
Telephone and Fax: (314) 561-3675
pkayser@fpsslaw.com

*Attorneys for Defendant Charles Roper*

**Certificate of Service**

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed via the Court's electronic filing system this 4th day of December, 2020, and will be served on the following via same:

James W. Schottel, Jr.
Schottel & Associates, PC
906 Olive St., PH
St. Louis, MO 63101
jwsj@schotteljustice.com

*Attorneys for Plaintiff*

Patricia A. Keck
Damon Phillips
Ty Z. Harden
Keck and Austin, LLC
3140 E. Division
Springfield, MO 65802
pat@kpwlawfirm.com
ty@kpwlawfirm.com

*Attorneys for Defendants City of Van Buren, Missouri and Alonzo Bradwell*

                              */s/ Portia C. Kayser*