ALONZO BRADWELL  10/30/2020

## Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF MISSOURI
 3                 SOUTHEASTERN DIVISION
 4
 5
 6    ROBIN MESEY and JENNIFER MESEY,  )
 7         Plaintiff,          )
 8    vs.                      )
 9    CITY OF VAN BUREN, MISSOURI, et  ) 1:19-CV-71 SNLJ
10    al,                      )
11         Defendant.          )
12
13
14
15         DEPOSITION OF ALONZO BRADWELL
16         TAKEN ON BEHALF OF THE PLAINTIFF
17             OCTOBER 30, 2020
18
19
20
21
22
23
24
25
```

## Page 2

```
 1                  INDEX
 2    QUESTIONS BY:                    PAGE
 3    Mr. Schottel                      7
 4
 5                EXHIBITS
 6    EXHIBIT                         PAGE
 7    1                                39
 8    2                                39
 9    3                                47
10
11        (Exhibits retained by Mr. Schottel.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1         CERTIFIED QUESTIONS
 2    Page 34, Line 7:
 3       Q.  So when he came to you, what did he tell you?
 4       A.  _____.
 5    Page 34, Line 25:
 6       Q.  Did Charles Roper tell you who he was with on
 7    that day?
 8       A.  _____.
 9    Page 35, Line 6:
10       Q.  Did Charles Roper tell you that the dog tried
11    to attack his wife?
12       A.  _____.
13    Page 35, Line 12:
14       Q.  Did Charles Roper tell you on the day of the
15    incident he fired a warning shot before shooting at
16    the dog?
17       A.  _____.
18    Page 37, Line 9:
19       Q.  Okay.  After the incident in question, did
20    you punish Charles Roper in any way?
21       A.  _____.
22
23
24
25
```

## Page 4

```
 1         CERTIFIED QUESTIONS
 2    Page 45, Line 2:
 3       Q.  Oh.  And I guess my question was outside of
 4    just obtaining those records, did you do any kind
 5    of -- or did your department do any kind of
 6    investigation into defendant Roper's actions on that
 7    day?
 8       A.  _____.
 9    Page 49, Line 4:
10       Q.  Okay.  So this says that Roper was not
11    disciplined by this defendant -- meaning you -- or the
12    City of Van Buren, Missouri as a result of any
13    incident involving plaintiff's dogs on February 22nd,
14    2019.  Is that true?
15       A.  _____.
16
17
18
19
20
21
22
23
24
25
```

1 (Pages 1 to 4)

## Page 5

1    UNITED STATES DISTRICT COURT
2    EASTERN DISTRICT OF MISSOURI
3    SOUTHEASTERN DIVISION
4
5    ROBIN MESEY and JENNIFER MESEY,  )
6         Plaintiff,        )
7    vs.              )
8    CITY OF VAN BUREN, MISSOURI, et )  1:19-CV-71 SNLJ
9    al,               )
10        Defendant.       )
11
12        DEPOSITION OF ALONZO BRADWELL, produced,
13   sworn and examined on OCTOBER 30, 2020, between the
14   hours of eight o'clock in the forenoon and six o'clock
15   in the afternoon of that day, at the Phelps County
16   Courthouse, 200 North Main Street, Skyroom, Rolla,
17   Missouri  65401, before Sarah J. Pokorski, a Certified
18   Court Reporter and Notary Public within and for the
19   State of Missouri, in a certain cause now pending in
20   the United States District Court, Eastern District of
21   Missouri, Southeastern Division, between ROBIN MESEY
22   and JENNIFER MESEY, Plaintiff vs. CITY OF VAN BUREN,
23   MISSOURI, et al, Defendant; on behalf of the
24   Plaintiff.
25

## Page 6

1    A P P E A R A N C E S
2
3    For the Plaintiff:
     Schottel & Associates
4    James W. Schottel, Jr.
     906 Olive Street, PH
5    St. Louis, Missouri  63101
     314-421-0350
6    jwsj@schotteljustice.com
7
8    For the Defendant:
     Keck Phillips
9    Ty Z. Harden
     3140 East Division Street
10   Springfield, Missouri  65802
     417-890-8989
11   ty@kpwlawfirm.com
12
13   Fisher Patterson Sayler & Smith
     Joshua C. Grumke
14   1010 Market Street
     Suite 1650
15   St. Louis, Missouri  63101
     314-561-3675
16   jgrumke@fpsslaw.com
17
18   Court Reporter:
     Sarah J. Pokorski, CCR
19   Missouri CCR No. 745
     Alaris Litigation Services
20   711 North Eleventh Street
     St. Louis, Missouri  63101
21   314-644-2191
     1-800-280-DEPO
22
23
24
25

## Page 7

1        IT IS HEREBY STIPULATED AND AGREED by and
2    between counsel for the Plaintiff and counsel for the
3    Defendant that this deposition may be taken in
4    shorthand by Sarah J. Pokorski, CCR, a Certified Court
5    Reporter and Notary Public, and afterwards transcribed
6    into typewriting; and the signature of the witness is
7    expressly reserved.
8
9        * * * * *
10
11        ALONZO BRADWELL,
12   Of lawful age, produced, sworn and examined on behalf
13   of the plaintiff, deposes and says:
14
15   (Starting time of the deposition:  12:11 p.m.)
16
17        DIRECT EXAMINATION
18   QUESTIONS BY MR. SCHOTTEL:
19        Q.  Could you state and spell your full name,
20   please.
21        A.  Alonzo Bradwell.  A-L-O-N-Z-O.  Last name
22   Bradwell.  B-R-A-D-W-E-L-L.
23        Q.  All right.  And can you state and spell your
24   current business address.
25        A.  P.O. Box 40, Van Buren, Missouri  63965.

## Page 8

1        Q.  Is there an actual street outside of a P.O.
2    Box for the department?
3        A.  Due to the flood, we're in a disaster trailer
4    still.
5        Q.  Oh, okay.
6        A.  So we have 1301 Main Street that we use for
7    like UPS packages, which is next to City Hall.
8        Q.  Oh, okay.
9        A.  But outside of that, we -- no.
10       Q.  All right.  Thanks for the clarification.
11   I'm sorry.  What was the zip code of Van Buren?
12       A.  63965.
13       Q.  Okay.  Chief Bradwell, my name is James
14   Schottel, Jr.  I represent Jennifer and Robin Mesey in
15   this case.  It's against the City of Van Buren,
16   yourself, and Charles Roper.  I'm sure you're well
17   aware of that by now.  The case has been going on for
18   some time.  I'll be asking you a series of questions.
19   Try to speak up.  I usually talk low; but during
20   these, the court reporter's going to be taking
21   everything down.  And because of that, please try to
22   refrain from answering a question by nodding your
23   head, and voice your answer, even if it's a yes or no.
24   And uh-huh and uh-uhs don't look good on the
25   transcript, so I might ask you to -- say is that a

2 (Pages 5 to 8)

ALONZO BRADWELL 10/30/2020

Page 9

1  yes, or is that a no. But hopefully once you get the
2  hang of it, we'll get beyond that. If you do not
3  understand a question, simply ask me to repeat it or
4  rephrase it, and I'll be happy to do that for you.
5  Sometimes us lawyers, our brains go faster than our
6  mouths, and the question sounds good to us inside, but
7  it doesn't come out the right way. Have you had your
8  deposition taken before?
9      A. Yes.
10     Q. About how many times?
11     A. Roughly five.
12     Q. Okay. And would that have been in relation
13 to your work as a law enforcement officer?
14     A. Yes.
15     Q. And would those roughly five depositions --
16 were those relating to criminal cases?
17     A. Yes.
18     Q. And a question I have to ask of everyone --
19 no offense -- are you presently under the influence of
20 any substance, drug, whether prescription or
21 non-prescription, that would affect your ability to
22 understand my questions or give testimony today?
23     A. No, sir.
24     Q. Did you review any documents, or photographs,
25 or anything else in preparation of your deposition

Page 10

1  today?
2      A. Just information with my attorney.
3      Q. I'm not talking about any attorney/client
4  discussions or anything. I'm talking actual physical
5  documents, pictures, or anything like that. Did you
6  take a look at anything?
7      A. I believe I looked at the incident report
8  from the Carter County Sheriff's Department last week
9  when we were trying to figure this out -- when to do
10 this deposition.
11     Q. Oh, okay. And are you talking about the
12 thick entire investigation file? Or just the report?
13     A. Just the incident report.
14     Q. Incident report. And do you remember who
15 authored that incident report?
16     A. I believe it was Chief Deputy Justin Eudaley.
17     Q. Okay. And who is he with?
18     A. Carter County Sheriff's Department.
19     Q. Okay. And what's your date of birth?
20     A. 11/6/1989.
21     Q. And what's the highest grade of education
22 you've completed?
23     A. Some college.
24     Q. Okay. And who is your present employer?
25     A. City of Van Buren, City of Eminence, City of

Page 11

1  Summersville.
2      Q. And what was the one after Van Buren? Could
3  you spell that for us and the court reporter.
4      A. City of Summersville.
5  S-U-M-M-E-R-S-V-I-L-L-E.
6      Q. And what was the other one?
7      A. Eminence? Is that -- that the one you're
8  asking me?
9      Q. Yeah. Could you spell that.
10     A. E-M-I-E-N-I-C-E. No. Hold on. Sorry. I
11 work there very rarely. So five --
12     MR. HARDEN: You've got -- Eminence.
13 You've got it; right, Sarah?
14     MR. SCHOTTEL: I don't have it.
15     MR. HARDEN: E-M-M --
16     THE WITNESS: No.
17     MR. HARDEN: -- I-N-E-N-C-E.
18     MR. GRUMKE: It's one M.
19     MR. HARDEN: It's just one?
20     THE WITNESS: Yes.
21     MR. HARDEN: Oh, there you go.
22     MR. SCHOTTEL: See, that's what I was
23 confused about.
24     MR. HARDEN: Really? Got me. I know
25 that's where the Ozark Trail starts, somewhere around

Page 12

1  there. I always think I'm going to jump on it, and I
2  haven't yet. Sorry. But --
3      MR. SCHOTTEL: That's all right.
4      Q. (BY MR. SCHOTTEL) What kind of work do you
5  do for City of Eminence?
6      A. Reserve officer.
7      Q. Okay. And what kind of work do you do for
8  the City of Summersville?
9      A. Reserve officer.
10     Q. Okay. And can you briefly describe what it
11 is a reserve officer does, or --
12     A. So the City of Summersville, if there is
13 someone who is unavailable to work -- for example, a
14 full-time employee -- a reserve officer would be
15 called in to see if they can work or cover that shift.
16     Q. All right. How long have you been a reserve
17 officer for City of Eminence?
18     A. Two years.
19     Q. Same question. How long have you been a
20 reserve officer for the City of Summersville?
21     A. Since 2013, I believe.
22     Q. Okay. When did you first become chief of
23 police for the City of Van Buren?
24     A. January 1st, 2019.
25     Q. Did you work for the City of Van Buren Police

3 (Pages 9 to 12)

### ALONZO BRADWELL  10/30/2020

Page 13

1  Department prior to becoming chief?
2      A. I did.
3      Q. And immediately prior to January 1, 2019,
4  what was your position with the police department?
5      A. Full-time officer.
6      Q. Full-time officer?
7      A. Yes, sir.
8      Q. How did you become chief? Was there an
9  application process? Were you nominated? Did you
10  have — what were the steps?
11      A. I had applied for it. There was an interim
12  chief at the time. I went through an interview with
13  the council and the mayor, and I was subsequently
14  appointed to the position.
15      Q. At the time you interviewed, how many members
16  were on the council? If you remember.
17      A. The same as there are now. There are four
18  council members and the mayor.
19      Q. Okay. When did you — in what year did you
20  first begin working for the Van Buren Police
21  Department?
22      A. In 2018, just — just prior.
23      Q. And did you start out as a full-time officer?
24      A. No, sir.
25      Q. No? Okay. What did you start out with the

Page 14

1  Van Buren Police Department?
2      A. It was a part-time position as I transferred
3  from another agency over, and which quickly led into a
4  full-time position.
5      Q. Okay. So were you — were you like a reserve
6  officer, or just a part-time officer?
7      A. I was a part-time officer.
8      Q. Okay. And do you remember what month in 2018
9  that was?
10      A. I don't.
11      Q. What police department did you transfer from?
12      A. I was the chief of police for the City of
13  Winona.
14      Q. And why did you leave that position?
15      A. We — my family and I wanted to move to
16  Carter County.
17      Q. Okay. How long were you the chief of police
18  for Winona?
19      A. Since 2014.
20      Q. Is that — you said that's Winona County?
21      A. Winona city.
22      Q. Winona city? I'm sorry.
23      A. In Shannon County.
24      Q. Okay. Did you hold other positions of
25  employment with the Winona City Police Department?

Page 15

1      A. I held different ranks.
2      Q. Right. That's what I meant.
3      A. Okay.
4      Q. Sorry.
5      A. The — starting out, I was a reserve officer,
6  then a full-time officer, then the corporal, then the
7  chief of police.
8      Q. And I'm not going to put you through the pain
9  of trying to remember which period you served when.
10  How about what year did you start working for the
11  Winona City Police Department?
12      A. 2012, I believe.
13      Q. Okay. And did you work for any other police
14  departments prior to Winona in 2012?
15      A. I — I can't remember if it was '12 or 2013
16  that I was a reserve at Summersville. So there could
17  be employment record for Summersville —
18      Q. Okay.
19      A. — as a reserve officer. But other than
20  that, no.
21      Q. All right. And where did you attend the
22  police academy?
23      A. Missouri State University, West Plains. The
24  sheriff's academy.
25      Q. Okay. And in what year did you attend that?

Page 16

1      A. From 2011 to 2012.
2      Q. Okay. And how long was that program?
3      A. I believe it was 11 months.
4      Q. Okay. And I'm assuming you got your
5  certificate from there.
6      A. Yes, sir.
7      Q. And from 2011 to current, have you ever
8  worked any secondary positions?
9      A. I don't understand the question.
10      Q. Secondary positions means like bars,
11  restaurants, things like that where they may need
12  additional law enforcement officers outside of the
13  regular work.
14      A. I — I've never worked as an officer in
15  something other than a law enforcement agency. No.
16      Q. Okay. It's more of a common thing in
17  St. Louis. There's secondary and different, you know,
18  areas of — wherever extra police might — might be
19  needed in the social domain. Like I said, bars,
20  restaurants. So that's why I asked the question.
21      A. Okay.
22      Q. Wasn't trying to confuse you.
23      A. We don't have that in our area, so I didn't
24  understand the question.
25      Q. Okay. No problem. Well, that would make

### ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
EXHIBIT J

## ALONZO BRADWELL  10/30/2020

### Page 17

1 sense why you didn't understand. Since you became
2 chief of police with the City of Van Buren, is one of
3 your duties to hire new police officers.
4     A.  Yes, sir.
5     Q.  And can you just briefly describe your
6 process for hiring new police officers.
7         MR. HARDEN:  And let me just go ahead and
8 make this statement now, just so we're clear, and --
9         MR. SCHOTTEL:  Well, I meant --
10        MR. HARDEN:  No.  You're good.
11        MR. SCHOTTEL:  -- involving with the
12 city --
13        MR. HARDEN:  No.  You're fine.  I just want
14 to put this on the record, if you don't mind.
15        MR. SCHOTTEL:  Sure.
16        MR. HARDEN:  For my sake, no one else's.
17 Today, Chief Bradwell was noticed in his official
18 capacity as the chief of police for deposition.  He
19 was not offered today or designated as a corporate
20 representative for the City or the police department,
21 and he's not testifying in that capacity today, and
22 plaintiff's counsel and I had that understanding.  I
23 just wanted to make sure that was on the record.
24 Thank you, Mr. Schottel.
25        MR. SCHOTTEL:  Yeah.  And that's why I

### Page 18

1 wanted to clarify that wasn't -- I wasn't asking about
2 the city.
3         MR. HARDEN:  And you're not.
4     Q.  (BY MR. SCHOTTEL)  Just your individual
5 process.
6     A.  Outside of police department?  Is that --
7     Q.  No.  Just as you're in your function as
8 sheriff, individually.
9     A.  I'm the chief of police.
10    Q.  Or I'm sorry.  I said sheriff.  My apologies.
11 As the chief, what is your hiring process?
12    A.  So I have, generally speaking, at that time,
13 being as I was just taking over, I -- my process then
14 was to look over application, check their POST license
15 to make sure that they're up to date on all their
16 training required by the State, and call references,
17 and then do an interview.  Then I would present it to
18 our council and mayor as either a recommendation, or I
19 would recommend an officer to go to work for me or not
20 to go to work for me.
21    Q.  Okay.  And Officer Charles Roper, was he on
22 the force at the time you became chief of police?
23    A.  No.
24    Q.  Okay.
25    A.  He had been prior to -- to me.

### Page 19

1     Q.  Okay.  So Charles Roper was hired when you
2 were chief of police?
3     A.  Yes, sir.
4     Q.  Okay.
5     A.  As a training reserve.
6     Q.  Okay.  Training reserve officer?  Is that
7 what it was?
8     A.  Yes, sir.
9     Q.  Can you describe what that is.
10    A.  With initial training, we -- may I rephrase?
11    Q.  Sure.
12    A.  I would hire an officer who has met the
13 qualifications through the interview process for
14 on-the-job training.  If they make it through that, at
15 that point, they would be listed as a reserve officer
16 ready to be called in.  At that time, Mr. Roper was
17 still in training.
18    Q.  And when you say at the time -- at the time
19 of the incident subject to the case when he shot the
20 Meseys' dogs, he was a training reserve officer?
21        MR. HARDEN:  Just object to form.
22        THE WITNESS:  He -- he held that position.
23 Yes.  He was not training when that incident happened.
24    Q.  (BY MR. SCHOTTEL)  Okay.  I guess that was a
25 bad question.  But that was the position that he held

### Page 20

1 at the time of the incident in this case?
2     A.  Yes, sir.
3     Q.  All right.  Do you remember when Mr. Roper
4 began holding that position?
5     A.  I believe his oath of office was the end of
6 January, beginning of February, in that time frame.  I
7 can't remember the exact date.
8     Q.  Yeah.  I'm not --
9     A.  Okay.
10    Q.  -- trying to tie you down to an exact date.
11 Just --
12    A.  Yeah.
13    Q.  -- month -- yeah.  That was -- and the
14 process that you mentioned before about reviewing
15 applications and then presenting it to a council when
16 you go to hire an officer, did any of that happen or
17 occur before Charles Roper became a training reserve
18 officer?
19    A.  They were notified, and they had no
20 objections.
21    Q.  Okay.  How long is the training reserve
22 period?
23    A.  Then, it would have been at the
24 recommendation of full-time officers that he trained
25 with.  At that point, when they stated to me that they

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334

EXHIBIT J

## ALONZO BRADWELL  10/30/2020

### Page 21

1  felt that he was ready to go back and be a reserve --
2  or to be a reserve, then I would do a ride-along
3  training with them --
4      Q.  Uh-huh.
5      A.  -- and quiz them on the streets, quiz them on
6  how-to on certain incidents.  And then they would be
7  put on the reserve list if I felt that they were ready
8  to do that.
9      Q.  Okay.  So you didn't have a specific time
10  frame.  What you're testifying to is that it's -- it's
11  on an individual, person-by-person basis.
12      A.  At the time, I was brand new to the
13  department as their chief, and there's a lot of
14  process that I was still working on to make official.
15      Q.  Okay.  And you said at that time.  So did you
16  change that aspect?
17      A.  I had completed what I was working on.  Yes.
18      Q.  Okay.  So by your testimony, is it fair to
19  say once you became chief of police, you kind of
20  reviewed everything, and had your own ideas on what
21  you wanted to assess, or how you wanted things to run
22  in the department?
23      A.  I think it's important for me to review
24  current policies and current procedures, budgets,
25  everything, before making a complete decision on any

### Page 22

1  ideas that I do have.  I had plenty of ideas, but I
2  wanted to make sure it would match with the department
3  at the time.
4      Q.  Okay.  And if you had policies with respect
5  to police practices, did you have to present them to
6  the council or the mayor for approval?
7      A.  Yes.
8      Q.  Okay.  I'm sorry.  Bear with me just a
9  second.
10      MR. HARDEN:  You're fine.
11      Q.  (BY MR. SCHOTTEL.)  And you're familiar with
12  the -- the claims that the Meseys are making in this
13  case; are you not?
14      A.  Yes.
15      Q.  Okay.  The incident subject to this case
16  involved the shooting of the Meseys' dogs by Officer
17  Charles Roper.  Is that fair to say?
18      A.  Can you re-ask that question, please.
19      Q.  Okay.  The claims involved in this case are
20  the shooting of the Meseys' dogs by Officer Charles
21  Roper.  Is that a fair statement?
22      MR. HARDEN:  Just object to form.  Go
23  ahead.
24      THE WITNESS:  I would -- I would say that
25  the incident involved Charles Roper.  Officer implies

### Page 23

1  to me that he was acting while on duty; and it was not
2  Officer Roper that was involved in this, in my
3  opinion.
4      Q.  (BY MR. SCHOTTEL.)  But Charles Roper?
5      A.  Yes.
6      Q.  And I'm sorry.  Even -- I didn't clarify.  By
7  your earlier testimony, he was not an officer anyway
8  with the department yet.  He was a training --
9      A.  He was a training reserve officer.
10      Q.  Training reserve officer.  When Mr. Roper
11  became a training reserve officer, was he given any
12  equipment to use by you or the department?
13      A.  I -- I do not believe so.  When -- when I
14  hear equipment, when it comes to a new hire, I would
15  say badge, commission card, vest, gun, things like
16  that.  I don't recall ever -- I know he didn't have a
17  badge, a commission card, or a department firearm.  In
18  regards to any other equipment, I -- I don't recall
19  that.  I don't know.
20      Q.  Okay.  What does -- what does an officer do
21  as a training reserve officer?
22      A.  They train with a full-time officer.
23      Q.  Okay.  Out on the streets?
24      A.  Yes.
25      Q.  Are -- when they're training out on the

### Page 24

1  streets with a full-time officer, are they supposed to
2  be carrying a weapon at that time?
3      A.  Yes.  They're -- through the State of
4  Missouri, they're a law enforcement officer still.
5      Q.  Right.
6      A.  With us, they're training.  So thus, they can
7  still carry a firearm, as long as they have been
8  previously qualified, or still up to date with the
9  firearm requirements for the State for POST licensing.
10      Q.  And to the best of your recollection, at that
11  time when he was a training reserve officer, was
12  Charles Roper qualified to carry a weapon?
13      A.  He was.  He was qualified by the Ripley
14  County Sheriff's Office, where he also held a position
15  at that time.
16      Q.  Okay.  Now, as a training reserve officer,
17  did you or the department provide Charles Roper with a
18  gun to carry when he was out in the streets with a
19  full-time officer?
20      A.  No.
21      Q.  Were -- was a training reserve officer
22  required to purchase their own gun?  Or were they
23  given an option?
24      A.  As a training reserve, they're given -- I
25  mean, we don't have a firearm to give them.

ALARIS LITIGATION SERVICES
www.alaris.us                Phone: 1.800.280.3376                Fax: 314.644.1334
EXHIBIT J

## ALONZO BRADWELL  10/30/2020

Page 25

1      Q.  Okay.
2      A.  We have three Glock pistols at our
3   department, and those are used by our full-time
4   officers.
5      Q.  Okay.
6      A.  All other firearms for a training officer --
7   or trainee officer -- reserve officer -- we would have
8   allowed them to carry a firearm that they were
9   qualified with, but we did not provide one.
10      Q.  In your opinion, and -- scratch that.  In
11   your opinion, if a training reserve officer is on the
12   streets with a full-time officer, would it be -- would
13   it be the safest and best idea that the training
14   reserve officer do have a weapon to carry while on the
15   streets?
16      MR. HARDEN:  Object to form.
17      THE WITNESS:  In -- in most cases.  Yes.
18      Q.  (BY MR. SCHOTTEL.)  When Charles Roper was a
19   training reserve officer, and when he was on the
20   streets with a full-time officer, do you know whether
21   or not he was carrying a firearm?
22      A.  He was.
23      Q.  Okay.  And how do you know he was?
24      A.  Because I approved it.
25      Q.  Okay.  And how did that approval process go?

Page 26

1      A.  During the hiring process of the -- and
2   scheduling of the training reserve to go out with an
3   officer, I have to approve any equipment that they do
4   have with them.  I approved his 1911 pistol that he
5   had been using for the Ripley County Sheriff's Office
6   and qualified with at that time.
7      Q.  Okay.  What about when it comes to handcuffs?
8   What's the position with respect to you and training
9   officers carrying handcuffs?  Do you provide those, or
10   do they provide -- they get their own?
11      A.  Only equipment that we have the capability of
12   providing would be a bullet-proof vest, a badge, and a
13   commission card, and uniforms, generally.  Again, we
14   went through a flood, and lost most of our things, so
15   we were rebuilding at that time.
16      Q.  Okay.  Do you know if Charles Roper had
17   handcuffs as a training reserve officer?
18      A.  He did.
19      Q.  Okay.  And would he have to get those
20   approved through you?
21      A.  All his equipment that he carried was
22   approved.
23      Q.  Okay.  And outside of the handcuffs and the
24   pistol, did he get anything else approved through you?
25      A.  It's -- the way you're asking me is difficult

Page 27

1   for me to understand.  When I see a duty belt, it's
2   difficult to take so many things off.  So his duty
3   belt and firearm as a whole was approved.
4      Q.  Okay.
5      A.  Okay.
6      Q.  So you don't know specifically -- it could
7   have had mace, I guess, in it.
8      A.  He did have mace.  Yes.
9      Q.  He did have mace?
10      A.  I believe so.  I'd have to -- again, I --
11   I -- that was a long time ago.  I'd have to --
12      Q.  Right.
13      A.  -- I guess go back and try to see if I can
14   remember.  I don't remember.
15      Q.  Yeah.  But you would have kept a record of
16   that?
17      A.  No.
18      Q.  No?  Okay.  Based upon your sitting here
19   today, is there anything else that you can remember
20   that Charles Roper was carrying as a training reserve
21   officer?
22      A.  I cannot recall.
23      Q.  Okay.  What about uniform?  Do you remember
24   or not whether you had a uniform for him at that time?
25      A.  I don't think we had a uniform.  I cannot

Page 28

1   remember.  But as a trainee, usually I would have the
2   trainees dress in a plain polo with khaki pants,
3   without any logos or anything like that on them.
4      Q.  Okay.
5      A.  But I don't remember exactly that situation.
6      Q.  All right.  Fair enough.  At the time you
7   became chief, did -- did you require any new hires to
8   go through any kind of firearm training or any
9   exercises?
10      A.  Our department does firearms training once a
11   year in the summer.
12      Q.  Okay.
13      A.  So on new hires, as long as they were
14   compliant with POST requirements for firearm hours,
15   then they would wait for our firearms qualification.
16      Q.  Okay.
17      A.  For Mr. Roper, he had completed his firearms
18   training out of Ripley County.
19      Q.  All right.  So if an officer -- or -- he
20   wasn't an officer.  But a person like Charles Roper
21   who had previous law enforcement experience, you would
22   take that into consideration because he would have I
23   guess done certain things that you may have required
24   him to, but he had already done the previous --
25      A.  I verified that he did complete those hours.

7 (Pages 25 to 28)

ALONZO BRADWELL  10/30/2020

Page 29

1    Yes.
2        Q.  Okay.  But I wasn't trying to trick you or
3    just nail -- narrow it down to Roper.  I was just
4    saying you, that's what you do generally when you look
5    at the new hires, or someone new you're bringing in.
6        A.  Yes.  I -- I verify to make sure they're
7    compliant with their POST licensing in the state, at
8    which point I go through their equipment, make sure
9    that I approve those.  And if they are still in
10   compliance outside of our agency's firearms
11   qualification, then they will be made to wait for that
12   qualification.
13       Q.  Okay.  You referenced a duty belt.  And I'm
14   not asking specifically to Charles Roper.  But I've
15   seen duty belts.  I'm not a police officer.  So if you
16   could enlighten me, what kinds of equipment can a duty
17   belt carry?
18       A.  Generally speaking, firearms, handcuffs, less
19   lethal devices, cell phone holders.
20       Q.  Yeah.
21       A.  You know, every duty belt's slightly
22   different, depending on the person.
23       Q.  Now, way back in the day -- I'm dating myself
24   here.  But they used to call it a night stick.  But
25   there's different names for it now.  Do you know what

Page 30

1    I'm talking about, with a handle that --
2        A.  It's still a night stick.
3        Q.  It's still a night stick?  Okay.
4        A.  There's different types of -- I think what
5    you're referring to would be an ASP, where it's
6    expandable, rather than fixed.
7        Q.  Okay.  So there's two types of them?  One you
8    can expand --
9        A.  I'm sure that there's plenty more --
10       Q.  Probably more?
11       A.  -- than two.  But those are the --
12       Q.  The ones you're aware of, or --
13       A.  Yeah.
14       Q.  Yeah.  I envision the one with a handle.
15       A.  Uh-huh.
16       Q.  And it's one piece.
17       A.  Right.
18       Q.  So that's called a night stick?
19       A.  Yeah.  That's still what I call it.
20       Q.  And my follow-up question was are your
21   officers allowed to carry a night stick if it's
22   approved?
23       A.  A night stick that -- the way you described
24   the night stick?
25       Q.  Either -- either one.

Page 31

1        A.  Okay.  They are allowed to carry expandable
2    batons.  That's what's taught in the academy.
3        Q.  Okay.
4        A.  Usually.
5        Q.  Is there any kind of training course or
6    anything that your department provides with respect to
7    mace?
8        A.  No.
9        Q.  Okay.
10       A.  We personally do not do that.  No.
11       Q.  All right.
12       A.  Can I clarify that, a little bit?
13       Q.  Sure.
14       A.  When I said we personally, I meant our
15   department does not have instructors that teach that.
16       Q.  Okay.  How did you first hear about the
17   incident with Charles Roper and the shooting of the
18   Meseys' dogs?
19       A.  From Officer Dyer.
20       Q.  And could you spell that.
21       A.  D-Y-E-R.
22       Q.  And is he with the Carter County Sheriff's
23   Department?
24       A.  He's with my department.
25       Q.  Oh, he's with your department.  Okay.  And

Page 32

1    how did he notify you about the incident?
2        A.  By calling me on my cell phone.
3        Q.  Okay.  Did he call you on the same day it
4    occurred?
5        A.  While he was on scene.  He had just arrived.
6        Q.  Okay.  And did Charles Roper come to see you
7    immediately after this incident?
8            MR. HARDEN:  Object to form.
9        Q.  (BY MR. SCHOTTEL)  Scratch the immediately.
10           MR. HARDEN:  Good.
11           THE WITNESS:  Mr. Roper did come to see me.
12   Yes.
13       Q.  (BY MR. SCHOTTEL)  And are you aware of what
14   happened with his weapon after the incident, after he
15   shot the dogs?
16       A.  Everything from the point that I spoke with
17   the sheriff of Carter County, which was the phone call
18   after I spoke with Officer Dyer, I -- I relinquished
19   the -- we relinquished the scene over to the sheriff's
20   department.  So I -- their procedures, I couldn't tell
21   you.
22       Q.  Okay.  Was the pistol -- or the gun that
23   Charles Roper shot the Meseys' dog with, was that the
24   same gun he was carrying on the streets as a training
25   reserve officer?

8 (Pages 29 to 32)

### ALONZO BRADWELL  10/30/2020

---

Page 33

1      A.  No.
2      **Q.  Can you describe the differences of the guns.**
3      A.   The information I read in the incident report
4  of the sheriff's department is that he used a
5  Springfield 45-caliber.  I approved a 1911 for him to
6  carry on duty.  He had a separate gun that I had
7  nothing -- I have no idea about, that he did not use
8  while under my care.
9      **Q.   The one you approved, can you state that one**
10  **again.**
11      A.  It was a 1911.  I -- I don't remember the
12  brand.
13      **Q.  Oh, okay.  And a 1911 is just a handgun?**
14      A.  Yes.  I believe it had a blue handle on the
15  1911, if I remember correctly.
16      **Q.  All right.  With your training reserve**
17  **officers, do you give them any instructions of whether**
18  **or not to carry their gun when they're not working?**
19      A.  At the time, there was a policy for reserve
20  officers -- and all officers, part-time, full-time --
21  to -- that they could wear a concealed firearm or a
22  firearm, as long as they had a badge and a commission
23  card.  With Mr. Roper, he was still in training, and
24  did not have a badge and a commission card.  And
25  because he was in training, we hadn't even made it

---

Page 34

1  that far --
2      **Q.  Okay.**
3      A.  -- to even have that discussion.
4      **Q.  And you said after the incident, he did come**
5  **and talk to you after he shot the Meseys' dogs?**
6      A.  Not immediately, but yes.
7      **Q.  So when he came to you, what did he tell you?**
8      MR. HARDEN:  All right.  So here's where
9  we're going to object, on the basis that any
10  information that Chief Bradwell obtained after he
11  received the call from Officer Dyer is privileged and
12  protected information as insurer/insured and
13  attorney/client privileged information, and the
14  material created or that he reviewed in the process is
15  also privileged and/or work-product protected,
16  including intangible work product.  Also,
17  communications between Mr. Roper and the police chief
18  are privileged and protected under the Garrity rule.
19  Therefore, Chief Bradwell, I will instruct you not to
20  answer this question or anything related to those
21  types of communications or material after you received
22  that call from Mr. Dyer.
23      MR. SCHOTTEL:  Can I have that question
24  certified for the court, please.
25      **Q.  (BY MR. SCHOTTEL.)  Did Charles Roper tell**

---

Page 35

1  you who he was with on that day?
2      MR. HARDEN:  Same objections.  Don't
3  answer.
4      MR. SCHOTTEL:  All right.  Have that
5  question certified for the court.
6      **Q.  (BY MR. SCHOTTEL.)  Did Charles Roper tell**
7  **you that the dog tried to attack his wife?**
8      MR. HARDEN:  Same objection.  Instruct you
9  not to answer.
10      MR. SCHOTTEL:  Have that question certified
11  for the court.
12      **Q.  (BY MR. SCHOTTEL.)  Did Charles Roper tell**
13  **you on the day of the incident he fired a warning shot**
14  **before shooting at the dog?**
15      MR. HARDEN:  Same objection.  Instruct you
16  not to answer.
17      MR. SCHOTTEL:  Have that question certified
18  for the court.
19      MR. HARDEN:  Can we go off the record for a
20  second.
21      (OFF THE RECORD.)
22      MR. HARDEN:  We're back on when he gets
23  done.
24      **Q.  (BY MR. SCHOTTEL.)  Do you know whether or**
25  **not Charles Roper was married or not?**

---

Page 36

1      A.  Yes.  He was married, to my knowledge.
2      **Q.  Do you know his wife's name?**
3      A.  I'm just drawing a blank.
4      **Q.  Have you -- have you ever --**
5      A.  Donna.
6      MR. HARDEN:  You got it.
7      **Q.  (BY MR. SCHOTTEL.)  There you go.  Have you**
8  **ever met Charles Roper's wife?**
9      A.  I believe at last year's Christmas party.
10      **Q.  Okay.**
11      A.  And maybe in passing, but --
12      **Q.  All right.  Do you know where Charles Roper's**
13  **wife's father lived?**
14      A.  Yes.
15      **Q.  And where did he live?**
16      A.  He lived at the end of Dale Street.
17      **Q.  Okay.  Do you know who his wife's father**
18  **lived with?**
19      A.  No, I don't.
20      **Q.  Okay.  At the time of the incident, did you**
21  **know where the Meseys lived?**
22      A.  I was told by Officer Dyer where this
23  incident occurred, and whose home they were at.  So at
24  that time, because of that, yes.
25      **Q.  Okay.  And what street was that, if you**

---

**ALARIS LITIGATION SERVICES**
www.alaris.us                Phone: 1.800.280.3376                Fax: 314.644.1334
EXHIBIT J

ALONZO BRADWELL  10/30/2020

## Page 37

1  recall?
2    A.  Dale Street.
3    Q.  After the incident, did you put Charles Roper
4  on any administrative leave?
5    A.  He was not able to finish his training.  And
6  he was not able to be used as a call-in officer
7  pending the investigation from the sheriff's
8  department.
9    Q.  Okay.  After the incident in question, did
10  you punish Charles Roper in any way?
11    MR. HARDEN:  Object to form.  This is the
12  same objection in terms of privileges and protections.
13  But also, I would add that there's confidentiality and
14  privacy rules for employment files.  I don't think
15  there's a protective order in place at this point.
16  And those types of issues directly fall under the
17  Garrity rule as well.
18    MR. SCHOTTEL:  Well, we can agree that this
19  questioning could be -- this portion would be sealed
20  under the transcript, which would -- we don't need a
21  protective order for that.  We can agree that this
22  question would be kept under seal in that way.  If
23  it's filed with the court, it's filed under seal.
24    MR. HARDEN:  I'll tell you what I'll do.
25  I'm going to instruct him not to answer, because I

## Page 38

1  don't want to waive any privileges or protections.
2  Okay.  You can certify that one to the court.  And if
3  there's a way that I can provide you the information
4  that you seek in that question in a non-privileged or
5  protected manner, I'll provide it to you.
6    MR. SCHOTTEL:  All right.
7    MR. HARDEN:  All right.  Otherwise, we can
8  either get back to him, or we can get it from someone
9  else if necessary.
10    MR. SCHOTTEL:  That's not the question.  I
11  don't need to get -- if I want to ask the witness
12  questions, then I need this witness to answer
13  questions.  And if you're instructing him not to
14  answer, then I have to have it certified by the court.
15    MR. HARDEN:  Okay.
16    MR. SCHOTTEL:  And we can bring it to the
17  court's attention.
18    MR. HARDEN:  Okay.
19    MR. SCHOTTEL:  So have that question
20  certified for the court.
21    MR. HARDEN:  Thank you.  I guess I should
22  incorporate by reference the same objections to the
23  same written discovery as well.
24    MR. SCHOTTEL:  All right.  We can go off
25  the record for just a minute.

## Page 39

1    (OFF THE RECORD.)
2  (PLAINTIFF'S EXHIBIT 1 AND 2 MARKED FOR THE RECORD.)
3    Q.  (BY MR. SCHOTTEL.)  I've just handed you
4  Plaintiff's Exhibit 1.  And it's a -- a few different
5  documents combined to one for the ease of -- of this
6  deposition.  Also, they're related.  And your response
7  to a Sunshine letter.  Could you identify Exhibit 1,
8  the top page, and what it contains.
9    MR. HARDEN:  And I'll just object to form,
10  foundation and hearsay.  Go ahead.
11    THE WITNESS:  It's a records completion
12  form in response to your second page of information --
13  your request.
14    Q.  (BY MR. SCHOTTEL.)  And what else is after my
15  second page?
16    MR. HARDEN:  I'll also object on the basis
17  this is discovery on discovery.  Go ahead.
18    THE WITNESS:  It's an officer narrative
19  report by Officer Dyer.
20    Q.  (BY MR. SCHOTTEL.)  And after -- after the
21  narrative report?
22    MR. HARDEN:  And then I'm going to object
23  on the last -- object to any examination, testimony,
24  use or display of any Missouri laws or city codes or
25  ordinances on the basis that the court will instruct

## Page 40

1  the jury on the law, and that witnesses should not
2  testify about legal conclusions.  Go ahead.
3    Q.  (BY MR. SCHOTTEL.)  Okay.  This is -- those
4  are documents you provided to me.  Correct?
5    A.  I -- I believe so.  I don't know if that was
6  its entirety.  I'd have -- I don't know.  I'd have to
7  look back at my records to show what I sent you.  But
8  from what I can tell here from the document
9  description on this records completion form, it
10  appears to be so.
11    Q.  Okay.  And that's your signature on the first
12  page.  Correct?
13    A.  Yes.
14    Q.  And so did -- you did receive the April 2nd,
15  2019 Sunshine law request from my office?
16    MR. HARDEN:  Object to form.  Again,
17  discovery on discovery and hearsay.  Go ahead.
18    THE WITNESS:  Yes.
19    Q.  (BY MR. SCHOTTEL.)  And in response, this
20  packet is what you returned to my office.  Is that
21  correct?
22    A.  Yeah.  I believe I also made a phone call to
23  your office because I was confused.
24    Q.  Right.
25    A.  Because we didn't work the case.  And so I

10 (Pages 37 to 40)

ALONZO BRADWELL  10/30/2020

## Page 41

1    wanted to make sure I sent what you needed.  Yes.
2       Q.  Okay.
3          MR. HARDEN:  Same objections.
4       Q.  (BY MR. SCHOTTEL.)  Right.  And outside that
5    phone call, these are just the physical documents that
6    you have mailed.  Is that to the best of your
7    recollection?
8       A.  Yes.
9       Q.  And the one-page reporting officer's
10   narrative that you identified the list of items, the
11   offense slash incident report narrative, that was by
12   Officer Dyer.  Is that correct?
13      A.  Yes.
14      Q.  And is that the same Officer Dyer that called
15   you that you had mentioned earlier?
16      A.  Yes.
17      Q.  And you had also sent five pages of animal
18   regulations from the Van Buren city code.
19         MR. HARDEN:  Same objections.
20         THE WITNESS:  Yes.
21      Q.  (BY MR. SCHOTTEL.)  Why did you send the
22   animal regulations?
23         MR. HARDEN:  Same objections.
24         THE WITNESS:  Your request was lastly,
25   please provide any ordinances or local laws relating

## Page 42

1    to dogs in the City of Van Buren.
2       Q.  (BY MR. SCHOTTEL.)  Okay.  And at the time of
3    the incident of Charles Roper shooting the Meseys'
4    dogs, do you have any knowledge of whether the Meseys'
5    dogs were leashed or not?
6       A.  Prior to the incident, you said?  Is that
7    what --
8       Q.  Prior to the incident of Charles Roper
9    shooting the Meseys' dogs --
10         MR. HARDEN:  And I'll just --
11      Q.  (BY MR. SCHOTTEL.) -- do you have any
12   knowledge of whether or not the Meseys' dogs had
13   leashes on them?
14         MR. HARDEN:  So I'm going to object just to
15   the extent it might call for privileged or protected
16   information, and instruct you to answer to the extent
17   you know based on personal knowledge.
18         THE WITNESS:  I -- I don't recall.
19   MR. SCHOTTEL:  All right.  If you'd hand --
20   MR. GRUMKE:  What is that?
21   MR. SCHOTTEL:  Counsel --
22         THE WITNESS:  Want me to hand it to him?
23   MR. HARDEN:  Answers to interrogatories.
24   MR. GRUMKE:  Okay.
25   MR. HARDEN:  At the end of the windy

## Page 43

1    objections, you'll see a sentence or two that'll
2    actually provide an answer sometimes.  So if you see a
3    big block of objections, and you're looking at this
4    for review, you might look to the end of that
5    paragraph for an answer.  Help shorten your review,
6    probably.  You remember these?  Taking a look at
7    these?  All right.  So you ready to go?
8          MR. SCHOTTEL:  Oh, yeah.  He's looking
9    through them.  Just go through every page, and just
10   check the last page.  It's been a while.
11         MR. HARDEN:  Well, if you want to ask him
12   about something in particular, go ahead.
13      Q.  (BY MR. SCHOTTEL.)  And Plaintiff's Exhibit 2
14   I just handed you, those are your answers to
15   interrogatories in this case?
16      A.  It appears so.
17      Q.  And I know it's been quite a while ago since
18   you answered them.  I just wanted you to look at the
19   last page.  Is that your signature?
20      A.  Yes, it is.
21      Q.  Okay.  And does November 21st, 2019 sound
22   about right?  Almost a year ago --
23      A.  Yeah.
24      Q.  -- that you signed them.
25      A.  Sounds right.

## Page 44

1       Q.  You had mentioned that the Carter -- or
2    Carter County did the investigation with respect to
3    Charles Roper and the shooting of the Meseys' dogs.
4    Is that correct?
5       A.  Yes.
6       Q.  Did your department do any investigation into
7    Charles Roper's actions in shooting the Meseys' dogs?
8          MR. HARDEN:  So I'll object to the extent
9    that it calls for privileged or protected information,
10   including attorney/client, insurer/insured privilege,
11   work product, including intangible work product, or
12   calls for information materially protected by the
13   Garrity rule that we discussed earlier.  To the extent
14   that it's possible to answer the question without
15   divulging anything that might be privileged or
16   protected, you may answer, otherwise I'd instruct you
17   not to answer.  So --
18         THE WITNESS:  I did follow up when the
19   sheriff's department -- with the sheriff's -- by
20   reading the sheriff's department reports.
21      Q.  (BY MR. SCHOTTEL.)  And who did you follow up
22   with?
23      A.  The Carter County Sheriff's Department.
24      Q.  Anybody in the -- or do you know the name?
25      A.  I did a records request just like you did to

ALARIS LITIGATION SERVICES
Phone: 1.800.280.3376
www.alaris.us                                    Fax: 314.644.1334
EXHIBIT J

ALONZO BRADWELL  10/30/2020

Page 45

1     me, and they sent that over to me.
2         Q.  Oh.  And I guess my question was outside of
3     just obtaining those records, did you do any kind
4     of -- or did your department do any kind of
5     investigation into defendant Roper's actions on that
6     day.
7             MR. HARDEN:  Again, same objections as
8     before.  Just immediately before.  You may answer to
9     the extent you will not divulge privileged and
10    protected information.  And I believe that by the
11    scope of his question, that would include before -- or
12    would include what Officer Dyer did.  Right?
13            THE WITNESS:  Okay.  So outside of what
14    Officer Dyer has told me in that phone call, and
15    reading his report, and getting a records request from
16    the sheriff's department, I did follow up with those.
17    After that, take the advice of my attorney and not
18    answer any more of that substance of that question, I
19    guess.
20            MR. HARDEN:  Yeah.  Well done.  Thank you.
21            MR. SCHOTTEL:  All right.  Have that
22    question certified for the court.
23        Q.  (BY MR. SCHOTTEL)  In the city of Van Buren,
24    are there occasions where large dogs are running loose
25    in the city?

Page 46

1         A.  We have received some calls of attacks.
2     Yeah.
3         Q.  And what is the policy and/or procedure that
4     the department takes when it receives those calls?
5             MR. HARDEN:  Just object to the extent that
6     the scope's vague.
7             THE WITNESS:  Generally, if a -- a dog gets
8     out of a fence or off a leash, and they're running
9     around in the neighborhood, the on-duty officer would
10    attempt to make contact with the owner, and most
11    likely write a citation if it's -- sometimes they'll
12    get warnings.  It depends on the situation.  It's --
13    that's the end of that, I guess.
14        Q.  (BY MR. SCHOTTEL)  Okay.  What if the owner
15    is not near, or if it's a dog that's unidentified?
16        A.  We're not a -- we're not animal control, so
17    we only enforce city ordinance by issuing criminal
18    summons, things like that.
19        Q.  All right.  Did you have an animal control
20    unit you could call to assist you?
21        A.  Not at that time.
22        Q.  Okay.  Do you have one now?
23        A.  No.
24        Q.  When Charles Roper was -- have to look at the
25    term -- a training reserve officer?  Is that correct?

Page 47

1         A.  Yes.
2         Q.  All right.  How would his time be logged with
3     the department?
4         A.  A time clock.
5         Q.  Time clock?  Okay.
6         A.  With a time card.
7         Q.  And would that go for every officer, no
8     matter whether you're a reserve, full-time, or
9     training?
10        A.  In most cases, yeah.
11            MR. SCHOTTEL:  Okay.  One last exhibit.
12            (EXHIBIT 3 MARKED FOR THE RECORD.)
13            MR. SCHOTTEL:  Thank you.
14        Q.  (BY MR. SCHOTTEL)  And these are plaintiff's
15    second set of interrogatories to you.  And flipping
16    through those, does that refresh your memory that you
17    had received those and answered those?
18        A.  Yes.
19        Q.  And on the last page, is that your signature
20    under verification?
21        A.  Yes.
22        Q.  All right.  And on the third page, it's --
23    this one's not numbered.  Some of the objections your
24    counsel stated here today are stated in the first half
25    of the answer.  But then it says additionally, subject

Page 48

1     to and without waiving any objection --
2             MR. HARDEN:  Object to the extent that your
3     question's going to be a conduit for hearsay and
4     privileged and protected information.  We maintain our
5     privileges and protection.  Move to strike any
6     testimony of counsel about this.
7             MR. SCHOTTEL:  I'm just reading off his
8     answer.
9             MR. HARDEN:  Which is hearsay.
10            MR. SCHOTTEL:  How is it hearsay?  It's his
11    answer.
12            MR. HARDEN:  On that document, it's
13    hearsay.  And we're maintaining our privileges and
14    protections, so -- go ahead.
15        Q.  (BY MR. SCHOTTEL)  Okay.  Beginning with the
16    word additionally, half down, could you read that
17    sentence.
18            MR. HARDEN:  I'm going to instruct you not
19    to do that.  I believe it would divulge the privileged
20    and protected information we've been trying to keep
21    privileged and protected throughout this deposition.
22            MR. SCHOTTEL:  Well, it's been waived in
23    this answer to interrogatory.
24            MR. HARDEN:  I think you think it's been
25    waived.  I think it says subject to and without

ALARIS LITIGATION SERVICES
www.alaris.us          Phone: 1.800.280.3376          Fax: 314.644.1334
EXHIBIT J

## ALONZO BRADWELL  10/30/2020

<table>
<tr><td>

Page 49

1  waiving, and then there's some responses there.  So
2  I'm going to instruct the deponent not to read
3  anything from there or respond from it at this time.
4      Q.  (BY MR. SCHOTTEL)  Okay.  So this says that
5  Roper was not disciplined by this defendant -- meaning
6  you -- or the City of Van Buren, Missouri as a result
7  of any incident involving plaintiff's dogs on February
8  22nd, 2019.  Is that true?
9          MR. HARDEN:  Do not respond on the basis of
10  attorney/client privilege, insurer/insured privilege,
11  work product, and the Garrity rule.
12          MR. SCHOTTEL:  Have that question certified
13  for the court.
14          MR. HARDEN:  And that's what I meant by
15  some other means.  If you could be provided certain
16  information, we'll provide it.  You know what I mean?
17          MR. SCHOTTEL:  I don't know anything what
18  you mean --
19          MR. HARDEN:  Okay.
20          MR. SCHOTTEL:  -- or said today, so -- I
21  don't.
22      Q.  (BY MR. SCHOTTEL)  Was Charles Roper a
23  reserve probationary officer?
24      A.  Yes.
25      Q.  And can you describe what a reserve

</td><td>

Page 51

1  just generally speaking.
2      Q.  Right.
3      A.  It would have to be approved.
4      Q.  Have you ever talked to Donna Roper about the
5  incident of Charles Roper shooting the Meseys' dogs?
6      A.  No.
7      Q.  Have you ever spoke to the Meseys about
8  Charles Roper shooting their dogs?
9      A.  No.
10          MR. SCHOTTEL:  Okay.  I don't think I have
11  any further questions.  Thank you for your time.
12          THE WITNESS:  Do you want me to set these
13  back over there, or --
14          MR. HARDEN:  I can -- may I have these
15  copies?
16          MR. SCHOTTEL:  Yeah, you can.
17          MR. HARDEN:  And then --
18          MR. SCHOTTEL:  The originals that you have
19  go to the -- or can you initial them, and then I'll
20  probably keep them.
21          THE REPORTER:  Before I do that, if no one
22  else has any questions, can someone cover signature.
23          MR. HARDEN:  Oh, yeah.  So you have the
24  opportunity to take a look at this, review it, and
25  make sure that it's all basically transcribed

</td></tr>
<tr><td>

Page 50

1  probationary officer is.
2      A.  They're on probation until they finish their
3  training.  Or the other word would be reserve training
4  officer, or training reserve officer, however you want
5  to put the word training in by reserve.
6      Q.  And as you testified before, that's on a
7  case-by-case basis?
8      A.  I'm sorry?
9      Q.  On how long that lasts.
10      A.  At that point, it was.  I had just taken
11  over.
12      Q.  Sure.
13      A.  So yes.
14      Q.  If a Van Buren Police Department officer has
15  the appropriate credentials to carry a firearm, are
16  they allowed to carry a firearm when they are not
17  working with your department?
18      A.  So at this time, the officer -- anything they
19  do off duty that does not have to do with any law
20  enforcement equipment, we do not have any oversight on
21  something like that.  If it's related to the law
22  enforcement equipment that's provided or trained with
23  for their job with us, then it has to be approved by
24  myself, and they do need to make sure they have their
25  credentials, if -- I guess it would be situational,

</td><td>

Page 52

1  correctly.  I think I'll recommend you just take a
2  look at it, and then we'll sign, basically.  Does that
3  sound good to you?
4          THE WITNESS:  Yeah.
5          THE REPORTER:  So I will -- are you
6  ordering a copy?
7          MR. HARDEN:  Yes.  You get it to us, we'll
8  get it to him.
9          THE REPORTER:  Okay.
10          MR. GRUMKE:  I'll take an eTran as well.
11
12      (Ending time of the deposition:  1:53 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

</td></tr>
</table>

13 (Pages 49 to 52)

## ALONZO BRADWELL  10/30/2020

---

### Page 53

```
 1              CERTIFICATE OF REPORTER
 2     STATE OF MISSOURI  )
 3                        ) ss.
 4     COUNTY OF PHELPS   )
 5
 6          I, Sarah J. Pokorski, Certified Court
 7     Reporter within and for the State of Missouri, do
 8     hereby certify that the witness whose testimony
 9     appears in the foregoing deposition was duly sworn by
10     me; that the testimony of said witness was taken by me
11     to the best of my ability and thereafter reduced to
12     typewriting under my direction; that I am neither
13     counsel for, related to, nor employed by any of the
14     parties to the action in which this deposition was
15     taken, and further that I am not a relative or
16     employee of any attorney or counsel employed by the
17     parties thereto, nor financially or otherwise
18     interested in the outcome of the action.
19          _____
20            Sarah Pokorski, CCR 745
21
22
23
24
25
```

### Page 54

```
 1        Alaris Litigation Services
          711 North Eleventh Street
 2        St. Louis, Missouri  63101
          Phone (314)644-2191 * Fax (314)644-1334
 3
 4     November 10, 2020
 5
       Keck Phillips
 6     Ty Z. Harden
       3140 East Division Street
 7     Springfield, Missouri  65802
 8
       In Re:  Mesey vs. City of Van Buren, Missouri
 9
10     Dear Mr. Harden:
11     Please find enclosed your copy of the deposition of
       ALONZO BRADWELL taken on OCTOBER 30, 2020, in the
12     above-referenced case.  Also enclosed is the original
       signature page and errata sheets.
13
14     Please have the witness read your copy of the
       transcript, indicate any changes and/or corrections
15     desired on the errata sheets, and sign the signature
       page before a notary public.
16     Please return the errata sheets and notarized
       signature page to my office for filing prior to trial
17     date.
18     Thank you for your attention to this matter.
19
20
21     Sincerely,
22     Sarah J. Pokorski, CCR
23     Enclosures
24     cc:  James W. Schottel, Jr., Joshua C. Grumke
25
```

### Page 55

```
 1     STATE OF _____  )
 2     COUNTY OF _____  ) ss.
                            )
 3
 4     I, ALONZO BRADWELL, do hereby certify:
          That I have read the foregoing deposition;
 5        That I have made such changes in form and/or
       substance to the within deposition as might be
 6     necessary to render the same true and correct;
          That having made such changes thereon, I hereby
 7     subscribe my name to the deposition;
          I declare under penalty of perjury that the
 8     foregoing is true and correct.
 9
10
11        _____
12             ALONZO BRADWELL
13        Executed this _____ day of _____, ____, at
14     _____.
15
16     Notary Public:
17     My Commission Expires:
18
19     Signature page to:  James W. Schottel, Jr.
20     ALONZO BRADWELL, OCTOBER 30, 2020
       Mesey vs. City of Van Buren, Missouri
21
22
23
24
25
```

### Page 56

```
 1          WITNESS ERRATA SHEET
       Witness Name:  ALONZO BRADWELL
 2     Case Name:  Mesey vs. City of Van Buren, Missouri
       Date Taken:  OCTOBER 30, 2020
 3
 4     Page #_____ Line #_____
       Should Read: _____
 5     Reason for Change: _____
 6     Page #_____ Line #_____
       Should Read: _____
 7     Reason for Change: _____
 8
       Page #_____ Line #_____
 9     Should Read: _____
       Reason for Change: _____
10
11     Page #_____ Line #_____
       Should Read: _____
12     Reason for Change: _____
13
14     Page #_____ Line #_____
       Should Read: _____
15     Reason for Change: _____
16     Page #_____ Line #_____
       Should Read: _____
17     Reason for Change: _____
18
19     Page #_____ Line #_____
       Should Read: _____
20     Reason for Change: _____
21     Page #_____ Line #_____
       Should Read: _____
22     Reason for Change: _____
23
24     Witness Signature: _____
25
```

ALONZO BRADWELL  10/30/2020

**A**

A-L-O-N-Z-O
7:21
ability 9:21 53:11
able 37:5,6
above-refere...
54:12
academy 15:22
15:24 31:2
acting 23:1
action 53:14,18
actions 4:6 44:7
45:5
actual 8:1 10:4
add 37:13
additional 16:12
additionally
47:25 48:16
address 7:24
administrative
37:4
advice 45:17
affect 9:21
afternoon 5:15
age 7:12
agency 14:3
16:15
agency's 29:10
ago 27:11 43:17
43:22
agree 37:18,21
AGREED 7:1
ahead 17:7
22:23 39:10
39:17 40:2,17
43:12 48:14
al 1:10 5:9,23
Alaris 6:19 54:1
allowed 25:8
30:21 31:1
50:16
Alonzo 1:15 5:12
7:11,21 54:11
55:4,11,19 56:1
and/or 34:15
46:3 54:14

55:5
animal 41:17,22
46:16,19
answer 8:23
34:20 35:3,9
35:16 37:25
38:12,14 42:16
43:2,5 44:14
44:16,17 45:8
45:18 47:25
48:8,11,23
answered 43:18
47:17
answering 8:22
answers 42:23
43:14
Anybody 44:24
anyway 23:7
apologies 18:10
appears 40:10
43:16 53:9
application 13:9
18:14
applications
20:15
applied 13:11
appointed 13:14
appropriate
50:15
approval 22:6
25:25
approve 26:3
29:9
approved
25:24 26:4
26:20,22,24
27:3 30:22
33:5,9 50:23
51:3
April 40:14
area 16:23
areas 16:18
arrived 32:5
asked 16:20
asking 8:18 11:8
18:1 26:25
29:14

ASP 30:5
aspect 21:16
assess 21:21
assist 46:20
Associates 6:3
assuming 16:4
attack 3:11 35:7
attacks 46:1
attempt 46:10
attend 15:21,25
attention 38:17
54:18
attorney 10:2
45:17 53:16
attorney/client
10:3 34:13
44:10 49:10
authored 10:15
aware 8:17
30:12 32:13

**B**

B-R-A-D-W-E-...
7:22
back 21:1 27:13
29:23 35:22
38:8 40:7
51:13
bad 19:25
badge 23:15,17
26:12 33:22
33:24
bars 16:10,19
based 27:18
42:17
basically 51:25
52:2
basis 21:11 34:9
39:16,25 49:9
50:7
batons 31:2
Bear 22:8
becoming 13:1
began 20:4
beginning 20:6
48:15
behalf 1:16 5:23

7:12
believe 10:7,16
12:21 15:12
16:3 20:5
23:13 27:10
33:14 36:9
40:5,22 45:10
48:19
belt 27:1,3
29:13,17
belt's 29:21
belts 29:15
best 24:10
25:13 41:6
53:11
beyond 9:2
big 43:3
birth 10:19
bit 31:12
blank 36:3
block 43:3
blue 33:14
Box 7:25 8:2
Bradwell 1:15
5:12 7:11,21,22
8:13 17:17
34:10,19 54:11
55:4,11,19 56:1
brains 9:5
brand 21:12
33:12
briefly 12:10
17:5
bring 38:16
bringing 29:5
budgets 21:24
bullet-proof
26:12
Buren 1:9 4:12
5:8,22 7:25
8:11,15 10:25
11:2 12:23,25
13:20 14:1 17:2
41:18 42:1
45:23 49:6
50:14 54:8
55:20 56:2

business 7:24

**C**

C 6:1,13 54:23
call 18:16 29:24
30:19 32:3,17
34:11,22
40:22 41:5
42:15 45:14
46:20
call-in 37:6
called 12:15
19:16 30:18
41:14
calling 32:2
calls 44:9,12
46:1,4
capability 26:11
capacity 17:18
17:21
card 23:15,17
26:13 33:23
33:24 47:6
care 33:8
carried 26:21
carry 24:7,12,18
25:8,14 29:17
30:21 31:1
33:6,18 50:15
50:16
carrying 24:2
25:21 26:9
27:20 32:24
Carter 10:8,18
14:16 31:22
32:17 44:1,2
44:23
case 8:15,17
19:19 20:1
22:13,15,19
40:25 43:15
54:12 56:2
case-by-case
50:7
cases 9:16
25:17 47:10
cause 5:19

ALONZO BRADWELL  10/30/2020

cc 54:23
CCR 6:18,19 7:4
    53:20 54:21
cell 29:19 32:2
certain 5:19
    21:6 28:23
    49:15
certificate 16:5
    53:1
certified 3:1 4:1
    5:17 7:4 34:24
    35:5,10,17
    38:14,20
    45:22 49:12
    53:6
certify 38:2
    53:8 55:4
change 21:16
    56:4,7,9,12,14
    56:17,19,22
changes 54:14
    55:5,7
Charles 3:6,10
    3:14,20 8:16
    18:21 19:1
    20:17 22:17
    22:20,25
    23:4 24:12,17
    25:18 26:16
    27:20 28:20
    29:14 31:17
    32:6,23 34:25
    35:6,12,25
    36:8,12 37:3
    37:10 42:3,8
    44:3,7 46:24
    49:22 51:5,8
check 18:14
    43:10
chief 8:13 10:16
    12:22 13:1,8,12
    14:12,17 15:7
    17:2,17,18 18:9
    18:11,22 19:2
    21:13,19 28:7
    34:10,17,19
Christmas 36:9

citation 46:11
city 1:9 4:12 5:8
    5:22 8:7,15
    10:25,25,25
    11:4 12:5,8,12
    12:17,20,23
    12:25 14:12,21
    14:22,25 15:11
    17:2,12,20
    18:2 39:24
    41:18 42:1
    45:23,25
    46:17 49:6
    54:8 55:20
    56:2
claims 22:12,19
clarification
    8:10
clarify 18:1 23:6
    31:12
clear 17:8
clock 47:4,5
code 8:11 41:18
codes 39:24
college 10:23
combined 39:5
come 9:7 32:6
    32:11 34:4
comes 23:14
    26:7
commission
    23:15,17 26:13
    33:22,24
    55:17
common 16:16
communicati...
    34:17,21
complete 21:25
    28:25
completed
    10:22 21:17
    28:17
completion
    39:11 40:9
compliance
    29:10
compliant 28:14

29:7
concealed
    33:21
conclusions
    40:2
conduit 48:3
confidentiality
    37:13
confuse 16:22
confused 11:23
    40:23
consideration
    28:22
contact 46:10
contains 39:8
control 46:16,19
copies 51:15
copy 52:6 54:11
    54:13
corporal 15:6
corporate 17:19
correct 40:4,12
    40:21 41:12
    44:4 46:25
    55:6,8
corrections
    54:14
correctly 33:15
    52:1
council 13:13,16
    13:18 18:18
    20:15 22:6
counsel 7:2,2
    17:22 42:21
    47:24 48:6
    53:13,16
County 5:15
    10:8,18 14:16
    14:20,23
    24:14 26:5
    28:18 31:22
    32:17 44:2,23
    53:4 55:2
course 31:5
court 1:1 5:1,18
    5:20 6:18 7:4
    8:20 11:3

34:24 35:5,11
    35:18 37:23
    38:2,14,20
    39:25 45:22
    49:13 53:6
court's 38:17
Courthouse
    5:16
cover 12:15
    51:22
created 34:14
credentials
    50:15,25
criminal 9:16
    46:17
current 7:24
    16:7 21:24,24

——— D ———

D-Y-E-R 31:21
Dale 36:16 37:2
date 10:19 18:15
    20:7,10 24:8
    54:17 56:2
dating 29:23
day 3:7,14 4:7
    5:15 29:23
    32:3 35:1,13
    45:6 55:13
Dear 54:10
decision 21:25
declare 55:8
defendant 1:11
    4:6,11 5:10,23
    6:8 7:3 45:5
    49:5
department 4:5
    8:2 10:8,18
    13:1,4,21 14:1,11
    14:25 15:11
    17:20 18:6
    21:13,22 22:2
    23:8,12,17
    24:17 25:3
    28:10 31:6,15
    31:23,24,25
    32:20 33:4

37:8 44:6,19
    44:20,23 45:4
    45:16 46:4
    47:3 50:14,17
departments
    15:14
depending
    29:22
depends 46:12
deponent 49:2
deposes 7:13
deposition 1:15
    5:12 7:3,15 9:8
    9:25 10:10
    17:18 39:6
    48:21 52:12
    53:9,14 54:11
    55:5,6,7
depositions
    9:15
Deputy 10:16
describe 12:10
    17:5 19:9 33:2
    49:25
described
    30:23
description
    40:9
designated
    17:19
desired 54:14
devices 29:19
differences
    33:2
different 15:1
    16:17 29:22
    29:25 30:4
    39:4
difficult 26:25
    27:2
DIRECT 7:17
direction 53:12
directly 37:16
disaster 8:3
disciplined 4:11
    49:5
discovery

ALONZO BRADWELL  10/30/2020

38:23 39:17,17
40:17,17
discussed
44:13
discussion 34:3
discussions
10:4
display 39:24
District 1:1,2 5:1
5:2,20,20
Division 1:3 5:3
5:21 6:9 54:6
divulge 45:9
48:19
divulging 44:15
document 40:8
48:12
documents
9:24 10:5
39:5 40:4
41:5
dog 3:10,16
32:23 35:7,14
46:7,15
dogs 4:13 19:20
22:16,20 31:18
32:15 34:5
42:1,4,5,9,12
44:3,7 45:24
49:7 51:5,8
domain 16:19
Donna 36:5
51:4
drawing 36:3
dress 28:2
drug 9:20
Due 8:3
duly 53:9
duties 17:3
duty 23:1 27:1,2
29:13,15,16,21
33:6 50:19
Dyer 31:19
32:18 34:11,22
36:22 39:19
41:12,14 45:12
45:14

**E**

E 6:1,1
E-M-I-E-N-I-C-E
11:10
E-M-M 11:15
earlier 23:7
41:15 44:13
ease 39:5
East 6:9 54:6
Eastern 1:2 5:2
5:20
education 10:21
eight 5:14
either 18:18
30:25,25
38:8
Eleventh 6:20
54:1
else's 17:16
Eminence
10:25 11:7,12
12:5,17
employed 53:13
53:16
employee 12:14
53:16
employer 10:24
employment
14:25 15:17
37:14
enclosed 54:11
54:12
Enclosures
54:22
enforce 46:17
enforcement
9:13 16:12,15
24:4 28:21
50:20,22
enlighten 29:16
entire 10:12
entirety 40:6
envision 30:14
equipment
23:12,14,18
26:3,11,21

29:8,16 50:20
50:22
errata 54:12,14
54:16 56:1
et 1:9 5:8,23
eTran 52:10
Eudaley 10:16
exact 20:7,10
exactly 28:5
examination
7:17 39:23
examined 5:13
7:12
example 12:13
Executed 55:13
exercises 28:9
exhibit 2:6 39:2
39:4,7 43:13
47:11,12
Exhibits 2:5,11
expand 30:8
expandable
30:6 31:1
experience
28:21
Expires 55:17
expressly 7:7
extent 42:15,16
44:8,13 45:9
46:5 48:2
extra 16:18

**F**

fair 21:18 22:17
22:21 28:6
fall 37:16
familiar 22:11
family 14:15
far 34:1
faster 9:5
father 36:13,17
Fax 54:2
February 4:13
20:6 49:7
felt 21:1,7
fence 46:8
figure 10:9

file 10:12
filed 37:23,23
files 37:14
filing 54:16
financially 53:17
find 54:11
fine 17:13 22:10
finish 37:5 50:2
firearm 23:17
24:7,9,25
25:8,21 27:3
28:8,14 33:21
33:22 50:15
50:16
firearms 25:6
28:10,15,17
29:10,18
fired 3:15 35:13
first 12:22 13:20
31:16 40:11
47:24
Fisher 6:13
five 9:11,15 41:17
fixed 30:6
flipping 47:15
flood 8:3 26:14
follow 44:18,21
45:16
follow-up 30:20
force 18:22
foregoing 53:9
55:5,8
forenoon 5:14
form 19:21
22:22 25:16
32:8 37:11
39:9,12 40:9
40:16 55:5
foundation
39:10
four 13:17
frame 20:6
21:10
full 7:19
full-time 12:14
13:5,6,23 14:4
15:6 20:24

23:22 24:1,19
25:3,12,20
33:20 47:8
function 18:7
further 51:11
53:15

**G**

Garrity 34:18
37:17 44:13
49:11
generally 18:12
26:13 29:4,18
46:7 51:1
getting 45:15
give 9:22 24:25
33:17
given 23:11
24:23,24
Glock 25:2
go 9:5 11:21 17:7
18:19,20 20:16
21:1 22:22
25:25 26:2
27:13 28:8
29:8 35:19
36:7 38:24
39:10,17 40:2
40:17 43:7,9
43:12 47:7
48:14 51:19
going 8:17,20
12:1 15:8 34:9
37:25 39:22
42:14 48:3,18
49:2
good 8:24 9:6
17:10 32:10
52:3
grade 10:21
Grumke 6:13
11:18 42:20,24
52:10 54:23
guess 4:3 19:24
27:7,13 28:23
38:21 45:2,19
46:13 50:25

ALONZO BRADWELL  10/30/2020

gun 23:15 24:18
  24:22 32:22
  32:24 33:6,18
guns 33:2

**H**
half 47:24 48:16
Hall 8:7
hand 42:19,22
handcuffs 26:7
  26:9,17,23
  29:18
handed 39:3
  43:14
handgun 33:13
handle 30:1,14
  33:14
hang 9:2
happen 20:16
happened
  19:23 32:14
happy 9:4
Harden 6:9
  11:12,15,17,19
  11:21,24 17:7
  17:10,13,16
  18:3 19:21
  22:10,22
  25:16 32:8,10
  34:8 35:2,8,15
  35:19,22 36:6
  37:11,24 38:7
  38:15,18,21
  39:9,16,22
  40:16 41:3,19
  41:23 42:10,14
  42:23,25
  43:11 44:8
  45:7,20 46:5
  48:2,9,12,18
  48:24 49:9,14
  49:19 51:14,17
  51:23 52:7
  54:6,10
head 8:23
hear 23:14 31:16
hearsay 39:10

40:17 48:3,9
  48:10,13
held 15:1 19:22
  19:25 24:14
Help 43:5
highest 10:21
hire 17:3 19:12
  20:16 23:14
hired 19:1
hires 28:7,13
  29:5
hiring 17:6 18:11
  26:1
hold 11:10 14:24
holders 29:19
holding 20:4
home 36:23
hopefully 9:1
hours 5:14
  28:14,25
how-to 21:6

**I**
I-N-E-N-C-E
  11:17
idea 25:13 33:7
ideas 21:20
  22:1,1
identified 41:10
identify 39:7
immediately
  13:3 32:7,9
  34:6 45:8
implies 22:25
important 21:23
incident 3:15,19
  4:13 10:7,13,14
  10:15 19:19,23
  20:1 22:15,25
  31:17 32:1,7,14
  33:3 34:4
  35:13 36:20
  36:23 37:3,9
  41:11 42:3,6,8
  49:7 51:5
incidents 21:6
include 45:11,12

including 34:16
  44:10,11
incorporate
  38:22
INDEX 2:1
indicate 54:14
individual 18:4
  21:11
individually
  18:8
influence 9:19
information
  10:2 33:3
  34:10,12,13
  38:3 39:12
  42:16 44:9,12
  45:10 48:4,20
  49:16
initial 19:10
  51:19
inside 9:6
instruct 34:19
  35:8,15 37:25
  39:25 42:16
  44:16 48:18
  49:2
instructing
  38:13
instructions
  33:17
instructors
  31:15
insurer/insured
  34:12 44:10
  49:10
intangible 34:16
  44:11
interested
  53:18
interim 13:11
interrogatories
  42:23 43:15
  47:15
interrogatory
  48:23
interview 13:12
  18:17 19:13

interviewed
  13:15
investigation
  4:6 10:12 37:7
  44:2,6 45:5
involved 22:16
  22:19,25 23:2
involving 4:13
  17:11 49:7
issues 37:16
issuing 46:17
items 41:10

**J**
J 5:17 6:18 7:4
  53:6 54:21
James 6:4 8:13
  54:23 55:19
January 12:24
  13:3 20:6
Jennifer 1:6 5:5
  5:22 8:14
jgrumke@fps...
  6:16
job 50:23
Joshua 6:13
  54:23
Jr 6:4 8:14
  54:23 55:19
jump 12:1
jury 40:1
Justin 10:16
jwsj@schottel...
  6:6

**K**
Keck 6:8 54:5
keep 48:20
  51:20
kept 27:15
  37:22
khaki 28:2
kind 4:4,5 12:4
  12:7 21:19
  28:8 31:5 45:3
  45:4
kinds 29:16

know 11:24
  16:17 23:16,19
  25:20,23
  26:16 27:6,14
  29:21,25
  35:24 36:2,12
  36:17,21 40:5
  40:6 42:17
  43:17 44:24
  49:16,17
knowledge 36:1
  42:4,12,17

**L**
large 45:24
lastly 41:24
lasts 50:9
law 9:13 16:12
  16:15 24:4
  28:21 40:1,15
  50:19,21
lawful 7:12
laws 39:24
  41:25
lawyers 9:5
leash 46:8
leashed 42:5
leashes 42:13
leave 14:14 37:4
led 14:3
legal 40:2
lethal 29:19
letter 39:7
license 18:14
licensing 24:9
  29:7
Line 3:2,5,9,13
  3:18 4:2,9
  56:3,6,8,11,13
  56:16,18,21
list 21:7 41:10
listed 19:15
Litigation 6:19
  54:1
little 31:12
live 36:15
lived 36:13,16,18

ALONZO BRADWELL  10/30/2020

36:21
local 41:25
logged 47:2
logos 28:3
long 12:16,19
  14:17 16:2
  20:21 24:7
  27:11 28:13
  33:22 50:9
look 8:24 10:6
  18:14 29:4
  40:7 43:4,6,18
  46:24 51:24
  52:2
looked 10:7
looking 43:3,8
loose 45:24
lost 26:14
lot 21:13
Louis 6:5,15,20
  16:17 54:2
low 8:19

_____

**M**

M 11:18
mace 27:7,8,9
  31:7
mailed 41:6
Main 5:16 8:6
maintain 48:4
maintaining
  48:13
making 21:25
  22:12
manner 38:5
MARKED 39:2
  47:12
Market 6:14
married 35:25
  36:1
match 22:2
material 34:14
  34:21
materially 44:12
matter 47:8
  54:18
mayor 13:13,18

18:18 22:6
mean 24:25
  49:16,18
meaning 4:11
  49:5
means 16:10
  49:15
meant 15:2 17:9
  31:14 49:14
members 13:15
  13:18
memory 47:16
mentioned
  20:14 41:15
  44:1
Mesey 1:6,6 5:5
  5:5,21,22 8:14
  54:8 55:20
  56:2
Meseys 22:12
  36:21 51:7
Meseys' 19:20
  22:16,20 31:18
  32:23 34:5
  42:3,4,9,12
  44:3,7 51:5
met 19:12 36:8
mind 17:14
minute 38:25
Missouri 1:2,9
  4:12 5:2,8,17
  5:19,21,23 6:5
  6:10,15,19,20
  7:25 15:23
  24:4 39:24
  49:6 53:2,7
  54:2,7,8
  55:20 56:2
month 14:8
  20:13
months 16:3
mouths 9:6
move 14:15
  48:5

_____

**N**

N 6:1

nail 29:3
name 7:19,21
  8:13 36:2
  44:24 55:7
  56:1,2
names 29:25
narrative 39:18
  39:21 41:10,11
narrow 29:3
near 46:15
necessary 38:9
  55:6
need 16:11
  37:20 38:11,12
  50:24
needed 16:19
  41:1
neighborhood
  46:9
neither 53:12
never 16:14
new 17:3,6 21:12
  23:14 28:7,13
  29:5,5
night 29:24
  30:2,3,18,21
  30:23,24
nodding 8:22
nominated 13:9
non-prescripti...
  9:21
non-privileged
  38:4
North 5:16 6:20
  54:1
notarized 54:16
notary 5:18 7:5
  54:15 55:16
noticed 17:17
notified 20:19
notify 32:1
November
  43:21 54:4
numbered
  47:23

_____

**O**

o'clock 5:14,14
oath 20:5
object 19:21
  22:22 25:16
  32:8 34:9
  37:11 39:9,16
  39:22,23
  40:16 42:14
  44:8 46:5
  48:2
objection 35:8
  35:15 37:12
  48:1
objections
  20:20 35:2
  38:22 41:3,19
  41:23 43:1,3
  45:7 47:23
obtained 34:10
obtaining 4:4
  45:3
occasions
  45:24
occur 20:17
occurred 32:4
  36:23
OCTOBER 1:17
  5:13 54:11
  55:19 56:2
offense 9:19
  41:11
offered 17:19
office 20:5
  24:14 26:5
  40:15,20,23
  54:16
officer 9:13 12:6
  12:9,11,14,17
  12:20 13:5,6
  13:23 14:6,6,7
  15:5,6,19 16:14
  18:19,21 19:6
  19:12,15,20
  20:16,18 22:16
  22:20,25
  23:2,7,9,10,11
  23:20,21,22

24:1,4,11,16,19
  24:21 25:6,7,7
  25:11,12,14,19
  25:20 26:3,17
  27:21 28:19
  28:20 29:15
  31:19 32:18,25
  34:11 36:22
  37:6 39:18,19
  41:12,14 45:12
  45:14 46:9,25
  47:7 49:23
  50:1,4,4,14,18
officer's 41:9
officers 16:12
  17:3,6 20:24
  25:4 26:9
  30:21 33:17
  33:20,20
official 17:17
  21:14
Oh 4:3 8:5,8
  10:11 11:21
  31:25 33:13
  43:8 45:2
  51:23
okay 3:19 4:10
  8:5,8,13 9:12
  10:11,17,19,24
  12:7,10,22
  13:19,25 14:5
  14:8,17,24 15:3
  15:13,18,25
  16:2,4,16,21
  16:25 18:21,24
  19:1,4,6,24
  20:9,21 21:9
  21:15,18 22:4
  22:8,15,19
  23:20,23
  24:16 25:1,5
  25:23,25 26:7
  26:16,19,23
  27:4,5,18,23
  28:4,12,16
  29:2,13 30:3,7
  31:1,3,9,16,25

_____

32:3,6,22
33:13 34:2
36:10,17,20
36:25 37:9
38:2,15,18
40:3,11 41:2
42:2,24 43:21
45:13 46:14
46:22 47:5,11
48:15 49:4,19
51:10 52:9
Olive 6:4
on-duty 46:9
on-the-job 19:14
once 9:1 21:19
28:10
one's 47:23
one-page 41:9
ones 30:12
opinion 23:3
25:10,11
opportunity
51:24
option 24:23
order 37:15,21
ordering 52:6
ordinance 46:17
ordinances
39:25 41:25
original 54:12
originals 51:18
outcome 53:18
outside 4:3 8:1
8:9 16:12 18:6
26:23 29:10
41:4 45:2,13
oversight
50:20
owner 46:10,14
Ozark 11:25

**P**

P 6:1,1
p.m 7:15 52:12
P.O 7:25 8:1
packages 8:7
packet 40:20

page 2:2,6 3:2
3:5,9,13,18 4:2
4:9 39:8,12,15
40:12 43:9,10
43:19 47:19
47:22 54:12
54:15,16 55:19
56:3,6,8,11,13
56:16,18,21
pages 41:17
pain 15:8
pants 28:2
paragraph 43:5
part-time 14:2,6
14:7 33:20
particular 43:12
parties 53:14,17
party 36:9
passing 36:11
Patterson 6:13
penalty 55:8
pending 5:19
37:7
period 15:9
20:22
perjury 55:8
person 28:20
29:22
person-by-pe...
21:11
personal 42:17
personally 31:10
31:14
PH 6:4
Phelps 5:15
53:4
Phillips 6:8
54:5
phone 29:19
32:2,17 40:22
41:5 45:14
54:2
photographs
9:24
physical 10:4
41:5
pictures 10:5

piece 30:16
pistol 26:4,24
32:22
pistols 25:2
place 37:15
plain 28:2
Plains 15:23
plaintiff 1:7,16
5:6,22,24 6:3
7:2,13
plaintiff's 4:13
17:22 39:2,4
43:13 47:14
49:7
please 7:20
8:21 22:18
34:24 41:25
54:11,13,16
plenty 22:1
30:9
point 19:15
20:25 29:8
32:16 37:15
50:10
Pokorski 5:17
6:18 7:4 53:6
53:20 54:21
police 12:23,25
13:4,20 14:1,11
14:12,17,25
15:7,11,13,22
16:18 17:2,3,6
17:18,20 18:6
18:9,22 19:2
21:19 22:5
29:15 34:17
50:14
policies 21:24
22:4
policy 33:19
46:3
polo 28:2
portion 37:19
position 13:4,14
14:2,4,14
19:22,25 20:4
24:14 26:8

positions 14:24
16:8,10
possible 44:14
POST 18:14
24:9 28:14
29:7
practices 22:5
preparation
9:25
prescription
9:20
present 10:24
18:17 22:5
presenting
20:15
presently 9:19
previous 28:21
28:24
previously 24:8
prior 13:1,3,22
15:14 18:25
42:6,8 54:16
privacy 37:14
privilege 44:10
49:10,10
privileged 34:11
34:13,15,18
42:15 44:9,15
45:9 48:4,19
48:21
privileges 37:12
38:1 48:5,13
probably 30:10
43:6 51:20
probation 50:2
probationary
49:23 50:1
problem 16:25
procedure 46:3
procedures
21:24 32:20
process 13:9
17:6 18:5,11,13
19:13 20:14
21:14 25:25
26:1 34:14
produced 5:12

7:12
product 34:16
44:11,11 49:11
program 16:2
protected 34:12
34:15,18 38:5
42:15 44:9,12
44:16 45:10
48:4,20,21
protection 48:5
protections
37:12 38:1
48:14
protective 37:15
37:21
provide 24:17
25:9 26:9,10
38:3,5 41:25
43:2 49:16
provided 40:4
49:15 50:22
provides 31:6
providing 26:12
public 5:18 7:5
54:15 55:16
punish 3:20
37:10
purchase 24:22
put 15:8 17:14
21:7 37:3 50:5

**Q**

qualification
28:15 29:11,12
qualifications
19:13
qualified 24:8
24:12,13 25:9
26:6
question 3:19
4:3 8:22 9:3,6
9:18 12:19 16:9
16:20,24
19:25 22:18
30:20 34:20
34:23 35:5,10
35:17 37:9,22

38:4,10,19
44:14 45:2,11
45:18,22
49:12
question's 48:3
questioning
37:19
questions 2:2
3:1 4:1 7:18
8:18 9:22
38:12,13 51:11
51:22
quickly 14:3
quite 43:17
quiz 21:5,5

**R**

R 6:1
ranks 15:1
rarely 11:11
re-ask 22:18
read 33:3 48:16
49:2 54:13
55:5 56:4,6,9
56:11,14,16,19
56:21
reading 44:20
45:15 48:7
ready 19:16 21:1
21:7 43:7
Really 11:24
Reason 56:4,7
56:9,12,14,17
56:19,22
rebuilding
26:15
recall 23:16,18
27:22 37:1
42:18
receive 40:14
received 34:11
34:21 46:1
47:17
receives 46:4
recollection
24:10 41:7
recommend

18:19 52:1
recommenda...
18:18 20:24
record 15:17
17:14,23 27:15
35:19,21
38:25 39:1,2
47:12
records 4:4
39:11 40:7,9
44:25 45:3,15
reduced 53:11
reference
38:22
referenced
29:13
references
18:16
referring 30:5
refrain 8:22
refresh 47:16
regards 23:18
regular 16:13
regulations
41:18,22
related 34:20
39:6 50:21
53:13
relating 9:16
41:25
relation 9:12
relative 53:15
relinquished
32:18,19
remember 10:14
13:16 14:8 15:9
15:15 20:3,7
27:14,19,23
28:1,5 33:11,15
43:6
render 55:6
repeat 9:3
rephrase 9:4
19:10
report 10:7,12,13
10:14,15 33:3
39:19,21 41:11

45:15
reporter 5:18
6:18 7:5 11:3
51:21 52:5,9
53:1,7
reporter's 8:20
reporting 41:9
reports 44:20
represent 8:14
representative
17:20
request 39:13
40:15 41:24
44:25 45:15
require 28:7
required 18:16
24:22 28:23
requirements
24:9 28:14
reserve 12:6,9
12:11,14,16,20
14:5 15:5,16,19
19:5,6,15,20
20:17,21 21:1,2
21:7 23:9,10,11
23:21 24:11,16
24:21,24 25:7
25:11,14,19
26:2,17 27:20
32:25 33:16
33:19 46:25
47:8 49:23,25
50:3,4,5
reserved 7:7
respect 22:4
26:8 31:6
44:2
respond 49:3,9
response 39:6
39:12 40:19
responses 49:1
restaurants
16:11,20
result 4:12 49:6
retained 2:11
return 54:16
returned 40:20

review 9:24
21:23 43:4,5
51:24
reviewed 21:20
34:14
reviewing 20:14
ride-along 21:2
right 7:23 8:10
9:7 11:13 12:3
12:16 15:2,21
20:3 24:5
27:12 28:6,19
30:17 31:11
33:16 34:8
35:4 36:12
38:6,7,24
40:24 41:4
42:19 43:7,22
43:25 45:12
45:21 46:19
47:2,22 51:2
Ripley 24:13
26:5 28:18
Robin 1:6 5:5,21
8:14
Rolla 5:16
Roper 3:6,10,14
3:20 4:10 8:16
18:21 19:1,16
20:3,17 22:17
22:21,25 23:2
23:4,10 24:12
24:17 25:18
26:16 27:20
28:17,20 29:3
29:14 31:17
32:6,11,23
33:23 34:17
34:25 35:6,12
35:25 37:3,10
42:3,8 44:3
46:24 49:5
49:22 51:4,5
51:8
Roper's 4:6
36:8,12 44:7
45:5

roughly 9:11,15
rule 34:18 37:17
44:13 49:11
rules 37:14
run 21:21
running 45:24
46:8

**S**

S 6:1
S-U-M-M-E-R-...
11:5
safest 25:13
sake 17:16
Sarah 5:17 6:18
7:4 11:13 53:6
53:20 54:21
saying 29:4
Sayler 6:13
says 4:10 7:13
47:25 48:25
49:4
scene 32:5,19
scheduling
26:2
Schottel 2:3,11
6:3,4 7:18 8:14
11:14,22 12:3,4
17:9,11,15,24
17:25 18:4
19:24 22:11
23:4 25:18
32:9,13 34:23
34:25 35:4,6
35:10,12,17,24
36:7 37:18
38:6,10,16,19
38:24 39:3,14
39:20 40:3,19
41:4,21 42:2,11
42:19,21 43:8
43:13 44:21
45:21,23
46:14 47:11,13
47:14 48:7,10
48:15,22 49:4
49:12,17,20

ALONZO BRADWELL  10/30/2020

49:22 51:10,16
51:18 54:23
55:19
scope 45:11
scope's 46:6
scratch 25:10
32:9
seal 37:22,23
sealed 37:19
second 22:9
35:20 39:12
39:15 47:15
secondary 16:8
16:10,17
see 11:22 12:15
27:1,13 32:6,11
43:1,2
seek 38:4
seen 29:15
send 41:21
sense 17:1
sent 40:7 41:1,17
45:1
sentence 43:1
48:17
separate 33:6
series 8:18
served 15:9
Services 6:19
54:1
set 47:15 51:12
Shannon 14:23
SHEET 56:1
sheets 54:12,14
54:16
sheriff 18:8,10
32:17
sheriff's 10:8,18
15:24 24:14
26:5 31:22
32:19 33:4
37:7 44:19,19
44:20,23
45:16
shift 12:15
shooting 3:15
22:16,20 31:17

35:14 42:3,9
44:3,7 51:5,8
shorten 43:5
shorthand 7:4
shot 3:15 19:19
32:15,23 34:5
35:13
show 40:7
sign 52:2 54:14
signature 7:6
40:11 43:19
47:19 51:22
54:12,14,16
55:19 56:24
signed 43:24
simply 9:3
Sincerely 54:20
sir 9:23 13:7,24
16:6 17:4 19:3
19:8 20:2
sitting 27:18
situation 28:5
46:12
situational
50:25
six 5:14
Skyroom 5:16
slash 41:11
slightly 29:21
Smith 6:13
SNLJ 1:9 5:8
social 16:19
sorry 8:11 11:10
12:2 14:22
15:4 18:10
22:8 23:6
50:8
sound 43:21
52:3
sounds 9:6
43:25
strike 48:5
Southeastern
1:3 5:3,21
speak 8:19
speaking 18:12
29:18 51:1
specific 21:9

specifically
27:6 29:14
spell 7:19,23
11:3,9 31:20
spoke 32:16,18
51:7
Springfield 6:10
33:5 54:7
ss 53:3 55:1
St 6:5,15,20
16:17 54:2
start 13:23,25
15:10
starting 7:15
15:5
starts 11:25
state 5:19 7:19
7:23 15:23
18:16 24:3,9
29:7 33:9
53:2,7 55:1
stated 20:25
47:24,24
statement 17:8
22:21
States 1:1 5:1,20
steps 13:10
stick 29:24
30:2,3,18,21
30:23,24
STIPULATED
7:1
street 5:16 6:4
6:9,14,20 8:1
8:6 36:16,25
37:2 54:1,6
streets 21:5
23:23 24:1,18
25:12,15,20
32:24
strike 48:5
subject 19:19
22:15 47:25
48:25
subscribe 55:7
subsequently
13:13

substance 9:20
45:18 55:6
Suite 6:14
summer 28:11
Summersville
11:1,4 12:8,12
12:20 15:16,17
summons 46:18
Sunshine 39:7
40:15
supposed 24:1
sure 8:16 17:15
17:23 18:15
19:11 22:2
29:6,8 30:9
31:13 41:1
50:12,24
51:25
sworn 5:13 7:12
53:9

———————
T
take 10:6 27:2
28:22 45:17
51:24 52:1,10
taken 1:16 7:3
9:8 50:10
53:10,15 54:11
56:2
takes 46:4
talk 8:19 34:5
talked 51:4
talking 10:3,4,11
30:1
taught 31:2
teach 31:15
tell 3:3,6,10,14
32:20 34:7,25
35:6,12 37:24
40:8
term 46:25
terms 37:12
testified 50:6
testify 40:2
testifying 17:21
21:10
testimony 9:22

21:18 23:7
39:23 48:6
53:8,10
Thank 17:24
38:21 45:20
47:13 51:11
54:18
Thanks 8:10
thereon 55:7
thereto 53:17
thick 10:12
thing 16:16
things 16:11
21:21 23:15
26:14 27:2
28:23 46:18
think 12:1 21:23
27:25 30:4
37:14 48:24
48:24,25
51:10 52:1
third 47:22
three 25:2
tie 20:10
time 7:15 8:18
13:12,15 18:12
18:22 19:16,18
19:18 20:1,6
21:9,12,15
22:3 24:2,11
24:15 26:6,15
27:11,24 28:6
33:19 36:20
36:24 42:2
46:21 47:2,4,5
47:6 49:3
50:18 51:11
52:12
times 9:10
today 9:22 10:1
17:17,19,21
27:19 47:24
49:20
told 36:22
45:14
top 39:8
Trail 11:25

ALONZO BRADWELL  10/30/2020

trailer 8:3
train 23:22
trained 20:24
   50:22
trainee 25:7
   28:1
trainees 28:2
training 18:16
   19:5,6,10,14,17
   19:20,23
   20:17,21 21:3
   23:8,9,10,11,21
   23:25 24:6,11
   24:16,21,24
   25:6,11,13,19
   26:2,8,17
   27:20 28:8,10
   28:18 31:5
   32:24 33:16
   33:23,25 37:5
   46:25 47:9
   50:3,3,4,5
transcribed 7:5
   51:25
transcript 8:25
   37:20 54:14
transfer 14:11
transferred 14:2
trial 54:16
trick 29:2
tried 3:10 35:7
true 4:14 49:8
   55:6,8
try 8:19,21 27:13
trying 10:9 15:9
   16:22 20:10
   29:2 48:20
two 12:18 30:7
   30:11 43:1
Ty 6:9 54:6
ty@kpwlawfir...
   6:11
types 30:4,7
   34:21 37:16
typewriting 7:6
   53:12

U
uh-huh 8:24
   21:4 30:15
uh-uhs 8:24
unavailable
   12:13
understand 9:3
   9:22 16:9,24
   17:1 27:1
understanding
   17:22
unidentified
   46:15
uniform 27:23
   27:24,25
uniforms 26:13
unit 46:20
United 1:1 5:1,20
University
   15:23
UPS 8:7
use 8:6 23:12
   33:7 39:24
usually 8:19
   28:1 31:4

V
vague 46:6
Van 1:9 4:12 5:8
   5:22 7:25 8:11
   8:15 10:25 11:2
   12:23,25
   13:20 14:1 17:2
   41:18 42:1
   45:23 49:6
   50:14 54:8
   55:20 56:2
verification
   47:20
verified 28:25
verify 29:6
vest 23:15
   26:12
voice 8:23
vs 1:8 5:7,22
   54:8 55:20
   56:2

W
W 6:4 54:23
   55:19
wait 28:15 29:11
waive 38:1
waived 48:22
   48:25
waiving 48:1
   49:1
want 17:13 38:1
   38:11 42:22
   43:11 50:4
   51:12
wanted 14:15
   17:23 18:1
   21:21,21 22:2
   41:1 43:18
warning 3:15
   35:13
warnings 46:12
wasn't 16:22
   18:1,1 28:20
   29:2
way 3:20 9:7
   26:25 29:23
   30:23 37:10
   37:22 38:3
we'll 9:2 49:16
   52:2,7
we're 8:3 17:8
   34:9 35:22
   46:16,16 48:13
we've 48:20
weapon 24:2,12
   25:14 32:14
wear 33:21
week 10:8
went 13:12
   26:14
West 15:23
wife 3:11 35:7
   36:8
wife's 36:2,13,17
windy 42:25
Winona 14:13,18
   14:20,21,22

14:25 15:11,14
witness 7:6
   11:16,20 19:22
   22:24 25:17
   32:11 38:11,12
   39:11,18 40:18
   41:20,24
   42:18,22
   44:18 45:13
   46:7 51:12
   52:4 53:8,10
   54:13 56:1,1
   56:24
witnesses 40:1
word 48:16
   50:3,5
work 9:13 11:11
   12:4,7,13,15
   12:25 15:13
   16:13 18:19,20
   34:16 40:25
   44:11,11 49:11
work-product
   34:15
worked 16:8,14
working 13:20
   15:10 21:14,17
   33:18 50:17
write 46:11
written 38:23

X

Y
yeah 11:9 17:25
   20:8,12,13
   27:15 29:20
   30:13,14,19
   40:22 43:8,23
   45:20 46:2
   47:10 51:16,23
   52:4
year 13:19 15:10
   15:25 28:11
   43:22
year's 36:9
years 12:18

Z
Z 6:9 54:6
zip 8:11

0

1
1 2:7 13:3 39:2,4
   39:7
1-800-280-D...
   6:21
1:19-CV-71 1:9
   5:8
1:53 52:12
10 54:4
1010 6:14
11 16:3
11/6/1989 10:20
12 3:13 15:15
12:11 7:15
1301 8:6
1650 6:14
1911 26:4 33:5,11
   33:13,15
1st 12:24

2
2 2:8 4:2 39:2
   43:13
200 5:16
2011 16:1,7
2012 15:12,14
   16:1
2013 12:21 15:15
2014 14:19
2018 13:22 14:8
2019 4:14 12:24
   13:3 40:15
   43:21 49:8
2020 1:17 5:13
   54:4,11 55:19
   56:2
21st 43:21
22nd 4:13 49:8
25 3:5
2nd 40:14

ALONZO BRADWELL  10/30/2020

| 3 | | | 8 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

**3** 2:9 47:12
**30** 1:17 5:13
  54:11 55:19
  56:2
**314-421-0350**
  6:5
**314-561-3675**
  6:15
**314-644-2191**
  6:21
**314)644-1334**
  54:2
**314)644-2191**
  54:2
**3140** 6:9 54:6
**34** 3:2,5
**35** 3:9,13
**37** 3:18
**39** 2:7,8

**4**
**4** 4:9
**40** 7:25
**417-890-8989**
  6:10
**45** 4:2
**45-caliber** 33:5
**47** 2:9
**49** 4:9

**5**

**6**
**6** 3:9
**63101** 6:5,15,20
  54:2
**63965** 7:25
  8:12
**65401** 5:17
**65802** 6:10
  54:7

**7**
**7** 2:3 3:2
**711** 6:20 54:1
**745** 6:19 53:20

**8**

**9**
**9** 3:18
**906** 6:4