UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ROBIN MESEY and JENNIFER MESEY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 1:19-CV-71 SNLJ |
| ) | |
| CITY OF VAN BUREN, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' STATEMENT OF FACTS
IN WHICH A GENUINE ISSUE EXISTS
AND PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS**

COMES NOW Plaintiffs Robin Mesey and Jennifer Mesey (collectively the "Plaintiffs"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and E.D.Mo. L.R. 4.01(E), sets forth the following Statement of Facts in Which a Genuine Issue Exists and Plaintiffs' Additional Undisputed Material Facts in Support of Plaintiffs' request for this Court to deny Defendant Charles Roper's ("Defendant" or "Defendant Roper") Motion for Summary Judgment:

**PLAINTIFFS' RESPONSES TO
DEFENDANT ROPER'S STATEMENT OF UNCONTROVERTED FACTS**

1. Plaintiffs admit the allegation of material fact in Paragraph 1 that "On February 22, 2019, Mr. Roper and his wife, Donna Roper, visited Mr. Roper's father-in-law, Jeffrey Walberg." (*See* Defendant's Statement of Facts No. 1).

2. Plaintiffs admit the allegation of material fact in Paragraph 2 that "Mr. Walberg and Plaintiffs live approximately one block apart on Dale Street in the City of Van Buren[1]." (*See* Defendant's Statement of Facts No. 2).

---

[1] This allegation of fact does not specify the time of this occurrence, but Plaintiffs will stipulate that this allegation of fact is true at the time of the incident subject to this case.

3. Plaintiffs deny the allegation of material fact in Paragraph 3 that "Mr. Walberg owned a blond husky mix named Draco, who at the time of the incident was approximately 16 years old." In reliance of this allegation of material fact, Defendant cites to: "Ex. C, Documents Produced by Plaintiff, Bates number PLF 025, Ex. A, 19:13-16." Exhibit C is a veterinarian document dated June 20, 2017 that states, "Owner of Draco: A Blond/White Husky, 13 yrs of age, 64.8lbs." The testimony cited from Defendant's deposition is Draco was 16 when he passed away in May or June of 2020. From the information relied upon Draco was approximately 14 ½ years old at the time of the incident on February 22, 2019. (*See* Defendant's Statement of Facts No. 3).

4. Plaintiffs deny this allegation of material fact in Paragraph 4 that "While leaving Mr. Walberg's house, Mr. and Mrs. Roper observed two dogs owned by Plaintiffs attacking Draco on the corner of Dale Street and Independence Street, near Mr. Walberg's home."

Defendant Roper testified he observed Draco laying on the ground, "As I approached the intersection." Defendant Roper further testified that he was driving his son's Ford Escape when he first saw Draco and Donna Roper was in the passenger seat of the vehicle defendant Roper was driving. (*See* Def. Ex. A, TR. 18:20-21:5). *See also* Probable Cause Statement - Property Damage 2nd degree RSMO 569.120 – Exhibit 6, p.3, *infra* (THE DOGS WERE FIGHTING IN THE STREET). Plaintiffs reassert and incorporate by reference every remark that the dogs were attacking that the dogs were fighting.

In contradiction, Defendant Roper gave a written statement to the Carter County Sheriff's Department and the written statement begins that he was in his vehicle "traveling on Dale St.," (Established by the Record – *See* Defendant Roper February 22, 2019 Written Statement – Exhibit 1 [hereinafter "Defendant Roper Written Statement – Ex. 1"]) (*See* Defendant's Statement of Facts No. 4).

2

5.  Plaintiffs admit in part the allegation of material fact in Paragraph 5 that "Draco was lying on the street bleeding from his ear and neck;"

Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, Plaintiffs object to the alleged fact that, "Plaintiffs dogs "were just ripping him apart."" Donna Roper's testimony given in her deposition completely contradicts defendant Roper's testimony. (*See* Defendant's Statement of Facts No. 5).

6.  Plaintiffs admit in part the material fact in Paragraph 6 that, "Plaintiffs' smaller dog (Nina) was biting Draco's paws" and denies the material fact in Paragraph 6 that, "Plaintiffs' larger dog (Max) had his jaws wrapped around Draco's throat." (*See Id.*, 21:18-21).

The testimony cited by Defendant does not support "Plaintiffs' larger dog (Max) had his jaws wrapped around Draco's throat." (*See* Defendant's Statement of Facts No. 6).

7.  Plaintiffs admit the allegation of material fact in Paragraph 7 that, "The smaller dog was a female American Bulldog, which, the time of the attack, weighed approximately 65 pounds and the larger dog was a Male American Bulldog weighing approximately 85 pounds." (*See* Defendant's Statement of Facts No. 7).

8.  Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, Plaintiffs object to the alleged fact in Paragraph 8 that, "Sometime prior to this incident, Mr. Roper witness the larger dog attempt to attack Mr. Walberg (in Mr. Walberg's own yard). Draco came to Mr. Walberg's defense and ended up fighting with Max until Max was pulled off Draco" because the material cited to support the fact cannot be presented in a form that would be admissible in evidence as it is hearsay. (*See* Defendant's Statement of Facts No. 8).

9.  Plaintiff denies thee material fact in Paragraph 9 that, "When Mr. and Mrs. Roper witnessed both dogs attacking Draco again on February 22, 2019, Charles stopped the car in the

3

middle of the street, got out, and yelled at the dogs from approximately 3 – 5 feet away, to get away from Draco."

Mrs. Roper's testimony contradicts Defendant Roper's as Defendant Roper first saw Draco when driving to Mr. Walberg's house and stopped his vehicle in the middle of the street. Defendant Roper testified he observed Draco laying on the ground, "As I approached the intersection." Defendant Roper further testified that he was driving his son's Ford Escape when he first saw Draco and Donna Roper was in the passenger seat of the vehicle defendant Roper was driving. (*See* Def. Ex. A, TR. 18:20-21:5)

Donna Roper gave a written statement to the Carter County Sheriff's Department, beginning with, "Was leaving my father's house..." If (established by the Record – *See* Donna Roper February 22, 2019 Written Statement – Exhibit 2 [hereinafter "Donna Roper Written Statement – Ex. 2"]) (*See* Defendant's Statement of Facts No. 9).

10. Plaintiffs admit the allegation of material fact in Paragraph 10 that, "During that time, Mr. Roper's wife exited the car." According to Defendant Roper there was "only one time" encountering the dogs. (*See* Def. Ex. A, TR. 18:20-21:5) (*See* Defendant's Statement of Facts No. 10).

11. Plaintiffs deny the allegation of material fact in Paragraph 11 that, "When neither dog released Draco, Mr. Roper fired a warning shot directly into the ground from his personal weapon, a Springfield XD-S firearm, and observed grass fly from where the bullet hit the ground." The bullet from this warning shot wound up and Nina's leg (the smaller dog). (*See* Def. Ex. B, TR. 43:22-23) (*See* Defendant's Statement of Facts No. 11 *see also* Defendant's Statement of Facts No. 29).

4

12. Plaintiffs admit the allegation of material fact in Paragraph 12 that, "Mr. Roper's firearm contained seven bullets in its magazine and one bullet in the chamber, totaling eight bullets." (*See* Defendant's Statement of Facts No. 12).

13. Plaintiffs admit the allegation of material fact in Paragraph 13 that, "This bullet from the warning shot was recovered by the Sheriff's department." (*See* Defendant's Statement of Facts No. 13).

14. Plaintiff admits the allegation of material fact in Paragraph 14 that, "Mr. Roper's gun "jammed" when the empty casing failed to properly eject after he fired his warning shot." (*See* Defendant's Statement of Facts No. 14).

15. Plaintiff admits the allegation of material fact in Paragraph 15 that, "Mr. Roper cleared the jam, by emptying the cases and an extra bullet from the gun." (*See* Defendant's Statement of Facts No. 15).

16. Plaintiff admits the allegation of material fact in Paragraph 16 that, "This unfired bullet was also recovered by the police department." (*See* Defendant's Statement of Facts No. 16).

17. Plaintiffs admit the allegation of material fact in Paragraph 17 that, "The smaller dog ran away after Mr. Roper fired his warning shot."
Plaintiffs deny in part the allegation of material fact in Paragraph 17 that, "that the dog ran from the attack" because this wording is not supported by the cited testimony. Defendant Roper testified, "The smaller one ran off, went on up Independence Street up the hill." (*See* Defendant's Statement of Facts No. 17).

18. Plaintiffs admit in part the allegation of material fact in Paragraph 18 that, "At that time, Mrs. Roper walked around her husband." Plaintiffs deny in part the allegation of material fact in Paragraph 18 that, "Mrs. Roper stated she was going to break up the remaining fight."

5

Mrs. Roper specifically testified, "said that she was going to break it up." (*See* Def Ex. B, TR. 29:17-19) (*See* Defendant's Statement of Facts No. 18).

19.   Plaintiff denies the allegation of material fact in Paragraph 19 that, "As Mrs. Roper neared, the larger dog showed his teeth, barked, held his tail stiff, and raised his hackles, all while staring at her."

This allegation of fact relies on both Defendant Roper's deposition testimony and Donna Roper's deposition testimony. Defendant Roper made a written statement to the Carter County Sheriff's Department on the date of the incident, February 22, 2019, and the statement contains none of these allegations in Paragraph 19. (Established by the Record – *See* Defendant Roper Written Statement – Ex. 1.

Likewise, Donna Roper Written Statement contains none of these allegations in Paragraph 19 that are in that written statement. (Established by the Record – *See* Donna Roper Written Statement – Ex. 2) (*See* Defendant's Statement of Facts No. 19).

20.   Plaintiffs deny the allegation of material fact in Paragraph 20 that, "The larger dog began coming towards Mrs. Roper." This contradicts the deposition testimony of Defendant Roper:

"Q. And I think you testified you thought the dog 18 was going to attack your wife.

A. I knew the dog was coming after my wife.

Q. How did you know that?

A. Because it was looking straight at her."

(*See* Def A, TR. 31:17-21).(*See* Defendant's Statement of Facts No. 20).

6

21. Plaintiffs deny the allegation of material fact in Paragraph 21 that, "Mr. Roper recognized these signals as a sign of imminent attack from the last time the larger dog had attacked Draco and Mr. Walberg."

Defendant Roper did not describe any of these "signals" in his written statement given on the day of the event. (Established by the Record – *See* Defendant Roper Written Statement – Ex. 1)(*See* Defendant's Statement of Facts No. 21).

22. Plaintiffs deny the allegation of material fact in Paragraph 22 that, "When the larger dog stepped towards Mr. Roper's wife, Mr. Roper pushed her behind him."

Donna Roper, Mr. Roper's wife, contradicted this statement and stated:

> "Q. Okay. What happened next?
> A. What happened next? I heard my husband take one shot, and it scared the smallest dog off. And then I went to take a few steps forward to see if I could try and coax Max off of my dad's dog. And then he just decided that hackles were raised, tail was stiff, you know, teeth bared, he was growling, and he was fixing -- he was coming over the top of Draco towards me, so my husband took a second shot." (*See* Def. D, TR. 18: 7-15.

(*See* Defendant's Statement of Facts No. 22).

23. Plaintiffs deny the allegation of material fact in Paragraph 23 that, "Still, the larger attacking dog proceeded to approach both Mr. Roper and his wife."

Donna Roper, Mr. Roper's wife, contradicted this statement and stated:

> "Q. Okay. What happened next?
> A. What happened next? I heard my husband take one shot, and it scared the smallest dog off. And then I went to take a few steps forward to see if I could try and coax Max off of my dad's dog. And then he just decided that hackles were raised, tail was stiff, you know, teeth bared, he was growling, and he was fixing -- he was coming over the top of Draco towards me, so my husband took a second shot." (*See* Def. D, TR. 18: 7-15).

(*See* Defendant's Statement of Facts No. 23).

24. Plaintiffs deny the allegation of material fact in Paragraph 24 that, "Mr. Roper then fired at the larger attacking dog, killing it."

Donna Roper testified: "Q. Was Max attacking you that day? A. No." (*See* Def. D, TR. 19:18-19). (*See* Defendant's Statement of Facts No. 24).

25. Plaintiffs admit the allegation of material fact in Paragraph 25 that, "This last bullet was never recovered, because it remained in the larger attacking dog after this incident." (*See* Defendant's Statement of Facts No. 25).

26. Plaintiffs admit the allegation of material fact in Paragraph 26 that, "Mr. Roper fired only these two shots and ejected the one additional bullet." (*See* Defendant's Statement of Facts No. 26).

27. Plaintiffs admit the allegation of material fact in Paragraph 25 that, "Plaintiffs confirmed that they only heard two gunshots." (*See* Defendant's Statement of Facts No. 27).

28. Plaintiffs admit the allegation of material fact in Paragraph 28 that, "When responding officers returned Mr. Roper's gun and ammunition to him, they returned five live rounds." (*See* Defendant's Statement of Facts No. 28).

29. Plaintiffs admit the allegation of material fact in Paragraph 29 that, "Although the smaller dog ran away from the attack after Mr. Roper fired his warning shot into the ground, when Plaintiffs took the smaller dog to the veterinarian after the incident, she was found to have a bullet lodged in her leg." (*See* Defendant's Statement of Facts No. 29).

30. Plaintiffs admit the allegation of material fact in Paragraph 30 that, "Sometime on or around April or May, 2020, the smaller attacking dog was diagnosed with heartworms and passed away one month later from the condition. (*Id.*, 53:3-10, Ex. L, Deposition of Plaintiff Jennifer Mesey." (*See* Defendant's Statement of Facts No. 30).

31.     Plaintiffs deny the allegation of material fact in Paragraph 31 that, "Neither of Plaintiffs' dogs were leashed during the attack; Plaintiffs did not have a wire or electric fence to restrain the dogs to their property."

Plaintiffs had an enclosure or shelter in their yard that restrained the dogs to their property. Robin Mesey testified to this:

"·Q.· Was Max free to roam?

A. No.

Q. What kept him in the backyard?

A. His enclosure was completely -- it was enclosed.

Q. So there was an enclosure in the backyard that contained a little shelter area where he stayed?

A. Yes."

(See Def. Ex. B, TR. 22:8-14) (*See* Defendant's Statement of Facts No. 31).

32.     Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, Plaintiffs object to the alleged fact in Paragraph 32 that "Despite local law requiring owners to leash or otherwise constrain dogs to an owner's property, Plaintiffs regularly failed to leash their dogs and had been cited at least three times prior to the attack" because the material cited to support the fact cannot be presented in a form that would be admissible in evidence as it is hearsay and irrelevant. (*See* Defendant's Statement of Facts No. 32).

33.     Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, Plaintiffs object to the alleged fact in Paragraph 33 that "Plaintiff Robin Mesey admitted that the larger dog had been aggressive towards another neighborhood dog on at least one instance prior to the attack on Draco at issue here" because the material cited to support the fact cannot be presented in a form

9

that would be admissible in evidence as it is irrelevant. (*See* Defendant's Statement of Facts No. 33).

34. Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, Plaintiffs object to the alleged fact in Paragraph 34 that "Even after the altercation between Plaintiffs' smaller and larger dogs and Draco, Plaintiffs did not leash or fence their remaining dogs, leading to an altercation on June 1, 2019, where in Plaintiff's third dog chased a man on a motorcycle and bit at his ankles several houses away from Plaintiffs' house" because the material cited to support the fact cannot be presented in a form that would be admissible in evidence as it is irrelevant, occurring months after the incident subject to this case. (*See* Defendant's Statement of Facts No. 34).

35. Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, Plaintiffs object to the alleged fact in Paragraph 35 that, "When an officer arrived at Plaintiffs' house to discuss the June 1, 2019 matter, he observed the dog running freely, not on a leash or enclosed in a fence" because the material cited to support the fact cannot be presented in a form that would be admissible in evidence as it is irrelevant, occurring months after the incident subject to this case. (*See* Defendant's Statement of Facts No. 35).

36. Plaintiffs admit the allegation of material fact in Paragraph 36 that, "Although Mr. Roper was a training reserve officer for the City of Van Buren, he was off-duty at the time of the incident." (*See* Defendant's Statement of Facts No. 36).

37. Plaintiffs admit the allegation of material fact in Paragraph 37 that, "Mr. Roper was not in uniform during this incident." (*See* Defendant's Statement of Facts No. 37).

38. Plaintiffs admit the allegation of material fact in Paragraph 38 that, "He and his wife were driving his son's Ford Escape." (*See* Defendant's Statement of Facts No. 38).

39. Plaintiffs admit the allegation of material fact in Paragraph 39 that, "When Mr. and Mrs. Roper left Mr. Walberg's residence, Charles was not leaving to do police work." (*See* Defendant's Statement of Facts No. 39).

40. "This incident had nothing to do with Mr. Roper's employment as a reserve deputy or police officer." (Established by the Record – *See* Plaintiff depo. – Ex. 5, TR. 21:12-23:2). (*See* Defendant's Statement of Facts No. 40).

41. Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, Plaintiffs object to the alleged fact in Paragraph 41 that, "Mr. Roper did not cite, ticket or otherwise charge Plaintiffs for any infraction relating to this incident" because the material cited to support the fact cannot be presented in a form that would be admissible in evidence as it is opinion and argument of counsel. (*See* Defendant's Statement of Facts No. 41).

**PLAINTIFFS' ADDITIONAL UNCONTROVERTED MATERIAL FACTS**

42. Prior to the incident subject to this case, Donna Roper was friends with Plaintiffs Robin Mesey and Jennifer Mesey. (Established by the Record – *See* Def. Ex. D. TR. 9:5-15).

43. Defendant Roper and Donna Roper's children were friends with Robin Mesey and Jennifer Mesey's children. (Established by the Record – *See* Def. Ex. D. TR. 9:16-24).

44. The dog that was owned by Robin Mesey and Jennifer Mesey and shot and killed by Defendant Roper was named "Max". (Established by the Record – *See* Def. Ex. B. TR. 18:21-25; Def. Ex. D. TR. 9:25-10:2).

45. Robin Mesey and Jennifer Mesey also owned a dog named "Nina". (Established by the Record – *See* Defendant Henry depo. – Ex. 2, TR. 25:11-26:1).

46. Donna Roper's father owned a dog named "Draco". (Established by the Record – *See* Def. Ex. D. TR. 12:23-13:3).

47. "Draco" was a German Shepherd mix and weighed more than 50 pounds; somewhere between 50 and 100 pounds. (Established by the Record – *See* Def. Ex. D. TR. 13:6-13).

48. Prior to the incident subject to this case, Donna Roper would spend time at the Plaintiffs' residence once or twice a week. (Established by the Record – *See See* Def. Ex. D. TR. 11:14-17).

49. When Donna Roper would socialize at the Plaintiffs' residence, Mrs. Roper was friendly with Max, would pet Max and Max never bit Donna Roper and never attacked Donna Roper. (Established by the Record – *See* Def. Ex. D. TR. 10:9-19).

50. When Donna Roper would socialize at the Plaintiffs' residence, Mrs. Roper was friendly with Nina, would pet Nina and Nina never bit Donna Roper and never attacked Donna Roper. (Established by the Record – *See* Def. Ex. D. TR. 10:6-8; 10:20-11:2).

51. After the incident, Draco did not get taken to a veterinarian for care. (Established by the Record – *See* Def. Ex. D. TR. 19:2-8).

52. Draco did not die from any wounds from the incident subject to this case. (Established by the Record – *See* Def. Ex. D. TR. 19:15-17).

53. Max was not attacking Donna Roper on the date of the incident. (Established by the Record – *See* Def. Ex. D. TR. 19:18-19).

54. Max did not bite Donna Roper on the date of the incident. (Established by the Record – *See* if Def. Ex. D. TR. 19:20-21).

55. Nina did not attack Donna Roper on the date of the incident. (Established by the Record – *See* Def. Ex. D. TR. 19:22-23).

56. Nina did not bite Donna Roper on the date of the incident. (Established by the Record – *See* Def. Ex. D. TR. 19:24-25).

57. Donna Roper testified to something additional at her deposition then was contained in her original written statement; Max showing his teeth towards her, Max's hackles being raised and Max's tail being straight out. (Established by the Record – *See* Def. Ex. D. TR. 21:13-23:21 and Donna Roper Written Statement – Ex. 2).

58. Defendant Roper knew that the 2 dogs were the Mesey's dogs and defendant Roper did not go to their house and asked them for help to get their dogs away from Draco. (Established by the Record – *See* Def. Ex. A. TR. 33:25-34:12).

59. Outside of yelling at the dogs, defendant Roper did not have any other plan to separate the dogs. (Established by the Record – *See* Def. Ex. A. TR. 33:8-10).

60. In defendant Roper's written statement he did not say that the Mesey's dogs were aggressive. (Established by the Record – *See* Def. Ex. A. TR. 40:7-19 and Defendant Roper Written Statement – Ex. 1).

61. Defendant Roper did not have any training as a Van Buren police officer, relating or pertaining to capturing loose, at large or stray dogs prior to the date of the occurrence subject to this suit. (Established by the Record – *See* Defendant Roper Answers to Interrogatories, No. 17 – Exhibit 3).

62. The City of Van Buren had laws governing animal regulation at the time of the incident. (Established by the Record – *See* City of Van Buren Animal Regulations – Exhibit 4 [hereinafter "Animal Regulations – Ex. 4"]).

63. Any dog found running at large called for police action in impounding the dog:

> "It shall be unlawful for the owner or keeper of any dog or cat to permit the same to run at large within the City of Van Buren at any time. Any dog or cat found

13

without the tag provided in Section 205.020, and any dog or cat found running at large, shall be impounded."

(Established by the Record – *See* Animal Regulations, p. 2 – Ex. 4).

Chief Alonzo Bradwell testified that:

> "**Q. (BY MR. SCHOTTEL.) In the city of Van Buren, are there occasions where large dogs are running loose in the city?**
> A. We have received some calls of attacks.
> Yeah.
> **Q. And what is the policy and/or procedure that** 4 **the department takes when it receives those calls?**
> MR. HARDEN: Just object to the extent that the scope's vague.
> THE WITNESS: Generally, if a -- a dog gets out of a fence or off a leash, and they're running around in the neighborhood, the on-duty officer would attempt to make contact with the owner, and most likely write a citation if it's -- sometimes they'll get warnings. It depends on the situation. It's -- that's the end of that, I guess."

(Established by the Record – *See* Deposition of Alonzo Bradwell – Exhibit 5 [hereinafter "Bradwell depo. – Ex. 5"], TR. 45:23-46:13).

64. At the time of the incident, there was not an animal control unit to call to assist with a loose dog. (Established by the Record – *See* Bradwell depo. – Ex. 5, TR. 46:19-21).

65. At the time of the incident, Defendant Roper was a reserve officer and was permitted to carry a firearm of his own, one was not provided to him by the City of Van Buren Police Department. (Established by the Record – *See* Bradwell depo. – Ex. 5, TR. 24:21-25:9).

66. As a result of this incident subject to this case, a probable cause statement was issued against Defendant Roper for the offense of Property Damage 2nd degree RSMO 569.120. (Established by the Record – *See* Probable Cause Statement - Property Damage 2nd degree RSMO 569.120 – Exhibit 6).

67. At the time of the occurrence of the 3 dogs fighting, Defendant Roper's father-in-law's dog, Draco, was not on a leash. (Established by the Record – *See* Def. Ex. A. TR. 22:21-23).

Respectfully submitted,

SCHOTTEL & ASSOCIATES, P.C.

BY: s/*James W. Schottel, Jr.*
    James W. Schottel, Jr.   #51285MO
    906 Olive St., PH
    St. Louis, MO 63101
    (314) 421-0350
    (314) 421-4060 facsimile
    jwsj@schotteljustice.com

    Attorney for Plaintiffs
    Robin Mesey
    Jennifer Mesey

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2021 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

    Portia C. Kayser
    pkayser@fpsslaw.com

    Attorney for Defendant
    Charles Roper


    Damon S. Phillips
    damon@kpwlawfirm.com

    Ty Z. Harden
    ty@kpwlawfirm.com

    Attorneys for Defendants
    City of Van Buren, Missouri
    Chief Alonzo Bradwell


    s/*James W. Schottel, Jr.*