UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ROBIN MESEY, et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 1:19-cv-71 SNLJ |
| | ) |
| CITY OF VAN BUREN, MO., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

### MEMORANDUM and ORDER

This matter is before the Court on defendants' motions for summary judgment. Plaintiffs filed their three-count complaint pursuant to 42 U.S.C. § 1983 against defendant Charles Roper, who was employed as a police officer by defendants the City of Van Buren, Missouri and Chief Alonzo Bradwell, in his official capacity. Plaintiffs allege that on February 22, 2019, defendant Roper shot two of plaintiffs' dogs under color of state law, constituting an unlawful seizure in violation of the Fourth Amendment. Defendants have filed motions for summary judgment [#30, #33].

**I.   Factual Background**

The following facts are undisputed except where noted.

Defendant Roper is employed as a police officer by defendant City of Van Buren, Missouri. On February 22, 2019, defendant Roper and his wife, Donna, visited Donna's father at his home while defendant Roper was off duty. Donna's father's home is near the home of plaintiffs Robin and Jennifer Mesey. Donna's father owned a blond husky mix

1

named Draco who was 14-16 years old.  As the Ropers left Donna's father's home in their vehicle, defendant Roper says he saw Draco being attacked by the plaintiffs' two dogs. (Plaintiffs appear to dispute that Draco was being "attacked" and instead say the dogs were fighting based on Roper's other written statements.)  Plaintiffs' two dogs were American Bulldogs—a female weighing 65 pounds named Nina and a male weighing 85 pounds named Max.  The parties agree that Draco was lying on the street bleeding from his ear and neck when defendant encountered them.

The Ropers exited their vehicle.  Defendant Roper says he yelled at the dogs from three to five feet away to get away from Draco and that, when the dogs did not stop, he fired a "warning shot" into the ground from his personal firearm.  Although the bullet may have hit the ground, it appears that that the bullet injured Nina, the smaller of the two bulldogs. Regardless, the parties agree that Nina ran away after defendant fired the "warning shot." Max, the larger of the two bulldogs, did not run away.

Donna then approached Draco and Max, the larger of the two bulldogs.  Defendant says that as "Mrs. Roper neared, the larger dog showed his teeth, barked, held his tail stiff, and raised his hackles, all while staring at her" and that Max then "began coming towards Mrs. Roper."  Defendant stated that he believed Max was going to attack his wife based on an earlier incident in which he says he saw Max attack his father-in-law and Draco. Plaintiffs deny the allegations that Max was showing his teeth, barking, holding his tail stiff, raising his hackles, staring at Donna Roper, or coming towards her.  Plaintiffs explain that they deny the statement because although it is supported by the Ropers' deposition testimony, they say it is not contained in the Ropers' written statements to the police.  The

2

Ropers' written statements are brief and do not contradict the deposition testimony at all. Donna Roper's written statement says "I went to them to try and break them up. The dog came towards me and my husband fired another shot at dog." [#53-2.] Defendant Charles Roper's statement says "As she approached the dog the dog released the dog and came at her. I fired 1 shot into the dog and it fell over. I feared for my wife's safety." [#53-1.] Plaintiffs argue defendant had not included information about Max's alleged earlier attack on defendant's father-in-law's dogs in the written statement, either. However, the statements are in no way contradictory.

Defendant Roper shot and killed Max. Upon hearing the gunshots, plaintiffs went outside to investigate. Defendant Roper called police, and the Van Buren police called in the Carter County Sheriff's office to investigate.

Plaintiffs filed the instant lawsuit. They brought Count I against defendant Roper under 42 U.S.C. § 1983 for violation of plaintiffs' Fourth Amendment rights, Count II for violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against defendants City of Van Buren and defendant Alonzo Bradwell, and Count III under 42 U.S.C. § 1983 against the defendant City and defendant Bradwell based on "respondeat superior" liability. All defendants have moved for summary judgment.

**II.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The

3

burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

**III.   Discussion**

Each motion is discussed in turn.

    **A.   Defendant Charles Roper's Motion for Summary Judgment**

The federal statute 42 U.S.C. § 1983 imposes liability for actions taken "under color of" law that causes a constitutional violation. *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005). Here, plaintiffs claim that defendant Roper's shooting of plaintiffs' dogs constituted an illegal seizure under the Fourth Amendment. Defendant Roper argues that he is entitled to summary judgment because he was not acting under color of state law when he shot the plaintiffs' dogs.

4

A public employee acts under color of law when that employee exercises "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Johnson v. Philips*, 664 F.3d 232, 239-40 (8th Cir. 2011). "The element is satisfied if the defendant acts or purports to act in the performance of official duties…" *Id.* "Acts of officers in the ambit of their personal pursuits are plainly excluded" from Section 1983. *Dossett*, 399 F.3d at 949. "Whether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997). In evaluating whether an officer acted under color of law, factors include whether an officer was on duty or in uniform and whether the officer had access to the victim because of his position. *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (citing *Roe*, 128 F.3d at 1216).

Defendant Roper notes that he was not on duty, not in uniform, not in a police vehicle, not on his way to report for duty, and did not use his service weapon. Further, he was in the company of his wife and acted to protect his wife from the threat of an 85-pound dog who had just injured another large dog. He was in the vicinity because of a personal visit with his father-in-law and not because of his position as a police officer. He also acted to assist the dog Draco, and later his wife, Donna, because of his personal relationships with them and not because of any official duty.

Plaintiffs suggest that defendant must have been acting under color of law because he used his firearm in the enforcement of the City of Van Buren's Animal Regulations, which allow for impoundment of unleashed and at-large dogs. Plaintiffs rely in part on defendant

5

Chief Bradwell's testimony that if a dog is "running around in the neighborhood, the on-duty officer would attempt to make contact with the owner, and mostly likely write a citation…sometimes they'll get warnings."  Plaintiffs contend that even though defendant Roper was off duty, he was performing the functions of an on-duty officer because Max and Nina were unleashed and running at large in violation of Van Buren's Animal Regulations.

The facts do not support that under these circumstances defendant Roper exercised power possessed by virtue of state law and made possible only because he was clothed with the authority of state law.  *See Johnson*, 664 F.3d at 239.  Although an officer called to the scene might have taken the same action, defendant Roper was acting "within the ambit of his personal pursuits." *Dossett*, 399 F.3d at 949.  Defendant did not act in performance of his official duties, nor did he purport to do so.  *See Johnson*, 664 F.3d at 239.  Plaintiffs even admit that the incident had nothing to do with defendant Roper's employment as a reserve deputy or police officer. [#53 at ¶ 40.]  Defendant Roper acted to prevent what he believed was an imminent attack on his wife, not to enforce a local regulation.

Because defendant Roper was plainly not acting under color of state law, this Court need not address his remaining arguments in favor of summary judgment.  Summary judgment will be granted to defendant Roper.

    **B.**    **Defendant City and Bradwell's Motion for Summary Judgment**

Counts II and III are against the City and police chief Alonzo Bradwell (in his official capacity) for allegedly failing to adequately train defendant Roper with respect to at-large dogs (Count II) and for "respondeat superior" liability (Count III).

6

Plaintiffs seem to concede that Count III fails on its face.  It is well-established that a municipality cannot be held liable on a respondeat superior liability theory solely because it employs a tortfeasor.  *See Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 389 (8th Cir. 2007).  The defendants are entitled to summary judgment on Count III.

As for Count II, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution."  *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978).  Here, no such deprivation of rights occurred because the Fourth Amendment is not implicated by the actions of a "private individual not acting as an agent of the Government." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  This Court has already determined that defendant Roper is entitled to summary judgment because he was not acting in his capacity as a police officer.  Summary judgment will thus be granted to the defendant City and Bradwell.

### C. Motions to Strike

Plaintiffs move to strike the defendants' replies to plaintiffs' responses to the defendants' statements of fact.  This Court did not consider the replies in granting summary judgment to the defendants and need not consider the motions as a result.

Accordingly,

IT IS HEREBY ORDERED that defendant Roper's motion for summary judgment [#33] is GRANTED.

IT IS FURTHER ORDERED that defendant City of Van Buren, Missouri and defendant Alonzo Bradwell's motion for summary judgment [#30] is GRANTED.

7

IT IS FINALLY ORDERED that plaintiffs' motions to strike [#62, #65] are DENIED as moot.

Dated this 29th day of March, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE